Sadie Fisher and Elmer Fisher, Appellees, v. United States Fidelity and Guaranty Company, Appellant.

Gen. No. 40,724.

Opinion filed January 19, 1942. Rehearing denied February 2, 1942.

McINERNEY, EPSTEIN & ARVEY, of Chicago, for appellant; JOHN L. McINERNEY and GEORGE L. SIEGEL, both of Chicago, of counsel.

A. S. & E. W. FROEHLICH, of Chicago, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal defendant, United States Fidelity & Guaranty Company, a corporation, seeks to reverse a judgment entered against it for $45,000.

The record discloses that plaintiffs brought an action against Joe Goldberg, Inc., a corporation and United States Fidelity & Guaranty Company, a corporation, as principal and surety on a bond executed by them June 12, 1937, in which it was recited that the principal, Joe Goldberg, Inc., had entered into a written agreement with plaintiffs for the erection of a building on West Roosevelt Road, Chicago. The bond

for $64,000 was in the usual form providing that if the building was constructed the bond would be void, otherwise to remain in full force and effect.

While the suit was pending, Joe Goldberg, Inc., was dismissed as a defendant for the reason that the United States Federal Court of this district had enjoined the prosecution of any suits against it because of a 77B bankruptcy proceeding in that court. The remaining defendant, the surety company, filed three successive answers, parts of which were stricken on motion of plaintiffs. An amendment to defendant's answer was filed August 17, 1938, and plaintiffs' motion to strike that amendment was sustained October 11, 1938. On that day it was ordered that plaintiffs' motion to strike the amendment to defendant's answer be sustained, the amendment was stricken and it was further ordered, on motion of attorneys for plaintiffs, "that this cause be and it is hereby set before this Court for Nov. 17, 1938, for hearing and trial upon the assessment of plaintiffs' damages in this cause."

When the cause was reached for trial, November 17, a jury was waived and thereupon counsel for defendant called the Court's attention to the fact that at the time the amendment to defendant's answer was stricken it was agreed by Court and counsel that defendant might file an amended answer so as to obviate plaintiffs' objections that the amendment to the answer stated conclusions and not facts and that this might be done at any time before or during the trial, and submitted an amendment, but on objection by counsel for plaintiffs, leave to file it was denied. The evidence was then submitted, the Court found the issues in plaintiffs' favor, assessed the damages at $45,000 and this appeal followed.

Plaintiffs owned real estate known as 3715–3717 and 3719 West Roosevelt Road, Chicago, which was improved with a one-story building containing three stores. June 12, 1937, plaintiffs entered into a contract

with Joe Goldberg, Inc., a corporation, as contractor, and the Road Theatre, Inc., as lessee, whereby Goldberg was to demolish the old building and construct a new one on the premises for $64,000.

The new building was to be used as a motion picture theatre and two small stores. March 3, 1937, plaintiffs, as lessors and the Road Theatre, Inc., as lessee, entered into a written lease for a building which was thereafter to be constructed. The lease covered a period of ·20 years from October 1, 1937 to September 30, 1957, at a rental of $264,000, payable in monthly installments of $1,000 each for a certain period. Thereafter it was increased to $1,200 per month and in addition the lease provided that in the event the gross income derived from the operation of the moving picture theatre was in excess of certain specified figures, 10 per cent of such excess should be paid as additional rent.

April 15, 1937, a permit was obtained from the Commissioner of Buildings for the construction of the new building. Plans and specifications for the building were agreed upon and July 7, 1937, Joe Goldberg, Inc., took possession of the property and demolished the old building except certain of the side walls which were to be used in connection with the construction of the new building in about a week. Thereupon Goldberg, Inc. started to construct the new building when almost immediately it was stopped July 18, 1937, by the Commissioner of Buildings of the city on the ground that it was a violation of an ordinance of Chicago to construct the theatre because it was within 200 feet of a church and Goldberg was prohibited by the police from proceeding with the construction of the new building. A day or two later the parties met to see if the matter could not be adjusted so that the building might be constructed but while the building might legally be constructed, it was said it could not be operated as a moving picture theatre and thereupon the lessee, the Road Theatre, Inc., stated it was not interested in the

lease unless it could operate the moving picture theatre. After some further negotiations the lease was cancelled December 9, 1937, apparently by agreement of all parties, and in the spring of 1938, plaintiffs erected a new building upon the premises consisting of four stores at a cost of $28,000 which brought in a rental of $500 per month.

Section 1893 of the Revised Chicago Code of 1931 provides that theatricals, shows and amusements, operated for gain to which the public is required to pay a fee, shall be divided into 22 classes, one of which includes motion picture entertainment, and section 1905 provides: "None of the foregoing twenty-two classes of entertainments shall be produced, offered, presented or carried on in any building not now devoted to such purposes within two hundred feet of any church, . . . said distance to be measured between the nearest point on the building within which it is proposed to produce, offer, present, or carry on, such entertainment or entertainments and the nearest point on such church." The plat of the premises in question shows there was a church 144.8 feet from the proposed theatre building, this distance being measured between the nearest point of the proposed theatre building and the church as the ordinance expressly provides.

Section 415 of the Revised Code of 1931 provides that the Commissioner of Buildings "shall have power to stop the construction of any building . . . when the same is being done . . . in violation of any ordinance." These ordinances and others were interposed in defendant's answer as a defense but on motion of plaintiffs they were stricken and plaintiffs contend properly so, because they constituted no defense. In this connection counsel say: "The rulings of the Court upon the pleadings were correct, and the various answers were properly stricken for the reason that they failed to set forth facts which constitute any of the defenses to this suit which they purport to state, to

wit: Illegality, impossibility of performance, legal frustration, or so-called mutual abandonment." And continuing counsel say: "The essential conditions of the bond are as follows: 'That if the said Principal shall well and truly perform and fulfill all of the covenants, conditions, stipulations and agreement in said agreement mentioned to be performed and more particularly described in said Exhibits "A" and "C" . . . and if the said Principal shall pay to the said Obligee all damages or forfeitures which may be sustained by reason of the non-performance or mal-performance on the part of the said principal of any of the covenants, conditions, stipulations provided in the said agreement and more particularly described in Exhibits "A" and "C," then this obligation shall be void; otherwise the same shall remain in full force and virtue.' " And counsel argue that "The condition of this construction bond is double. It contains both a guarantee that the contractor shall perform his contract, and an indemnification against all damages. It is a contract of guarantee insurance." They say that "Section 1905 [of the ordinance] does not pretend to prohibit anything except the *production, under certain conditions, of theatrical performances;* nothing short of the production, or attempted production of theatrical performances under the conditions stated is illegal. . . .

"So the essential question posed by the answer is: how can this ordinance, which only forbids the *producing of moving picture entertainment* in this location if, as and when such entertainment is offered, render illegal a contract for the *demolition of an old building and the construction of a new one?* Nay, further: how can it make illegal the particular instrument sued on in this case, which is a separate and distinct legal obligation, the insurance against loss resulting from any breach of the contract to demolish and construct? . . . It [the bond] *is not conditioned upon anything else.*

"Stated otherwise, there is not a single syllable in the pleaded ordinance which inveighs against the erection of any kind of a structure, anywhere, for any purpose. The ordinance does not even say that the structure when completed cannot be used. It does not purport to deal with a structure. It declares only that *no entertainment shall be produced.* It is the theatrical . production, and not the use of the structure, which the ordinance purports to license, regulate, or forbid. Unless and until some one attempts to produce a theatrical entertainment in the building after its completion, such a thing as a violation of the ordinance simply cannot and does not occur."

The harsh rule of law contended for by counsel for plaintiffs which would render the surety company liable on its bond, if the new building were not constructed because it could not be used for the purpose for which it was constructed and therefore a particularly useless expense would be incurred, has been somewhat relaxed. Section 454 Restatement of Contracts; § 1931, p. 5407, 6 Williston on Contracts, Rev. Ed.; *Chicago M. & St. P. R. Co. v. Hoyt,* 149 U. S. 1; *The Kronprinzessin Cecilie,* 244 U. S. 12; *Levy v. Rosen,* 300 Ill. App. 523. In defining the impossibility of performance of contracts, § 454 of the Restatement states: "In the Restatement of this Subject impossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." And the "Comment" following this section is: "a. A statement that it is only when facts make performance impossible that they have the operation stated in this Chapter, and that it is not enough that they create extreme difficulty must be interpreted in order to be correct. 'Impossible' must be given a practical rather than a scientifically exact meaning. Impracticability rather than absolute impossibility is enough; and the words 'impossible' and 'impossibility' are used in the Restatement of this Sub-

ject with that meaning. Mere unanticipated difficulty, however, not amounting to impracticability is not within the scope of the definition." Professor Williston in § 1931 above cited, in discussing the development and nature of the modern defense of impossibility of performance of a contract says: "The law must adopt either a strict rule which will require the parties, when they form a contract, to forsee its consequences as accurately as possible, though at the expense of serious hardship to one of them if unforeseen circumstances render it impossible to perform his promise, or a rule giving an excuse under such circumstances. The early cases accepted the former alternative; the later cases tend to adopt the other." After stating the strict rule of enforcement of contracts and later the relaxation of the rule he continues: "the essence of the modern defense of impossibility is that the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible. While the mere fact that performance of a promise is made more difficult and expensive than the parties anticipated when the contract was made will not ordinarily excuse the promisor as is shown by cases too numerous for citation, nevertheless there are other decisions allowing an excuse where very greatly increased difficulty had been caused by facts not only unanticipated but inconsistent with the facts that the parties obviously assumed to exist or to be likely to continue. The true distinction is not between difficulty and impossibility. A man may contract to do what is impossible, as well as what is difficult, and be liable for failure to perform. The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract.

If so, the risk should not fairly be thrown upon the promisor.''

In the instant case it is clear all parties were of opinion and assumed that the moving picture theatre could legally be constructed and operated on the property in question. A tripartite agreement was entered into between plaintiffs, the owners, the contractor, Joe Goldberg, Inc., a corporation, and the Road Theatre Company and a lease covering a period of 20 years was also executed between plaintiffs, as lessors, and the Road Theatre Company, as lessee. A permit was obtained from the City for the construction of the theatre and the bond in suit specifically refers to the tripartite agreement which in turn refers to the lease and the construction agreement entered into between plaintiffs and Goldberg, Inc. All of these documents must be construed together and when so construed we think it obvious no party anticipated that the construction of the theatre was in violation of any ordinance. The contract for the construction and operation of the building being in violation of the ordinance, was unenforceable. *Bairstow v. Northwestern University*, 287 Ill. App. 424; *Wolthausen v. Lederer*, 313 Ill. App. 143 (Abst.), opinion filed this day. We think the court erred in striking the ordinance from defendant's answer.

Since the judgment must be reversed and the cause remanded we think we ought to say that if upon redocketing the case defendant requests the court for leave to file the answer which it submitted just prior to the beginning of the trial (the substance of which was that by agreement of all parties the construction of the theatre building was abandoned) it should be permitted to do so.

Contrary to defendant's contention we think the cancellation of the 20 year lease was a proper element of damage to be considered.

The judgment of the superior court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

McSURELY, P. J., concurs.

MR. JUSTICE MATCHETT specially concurring: I agree this cause should be remanded to permit the defendant to interpose its answer that after the execution of the bond all the parties mutually agreed to abandon the enterprise upon which it was based.

I do not agree with the theory that under the facts here appearing it was either impossible or impracticable to perform the contract, nor do I think the facts bring this case within the class to which the doctrine of "frustration" is applicable. Williston on Contracts, Vol. 6, § 1935, p. 5419.