(No. 26506—)
IRENE GILLOCK, Appellee, vs. WILLIAM J. HOLDAWAY,
Appellant.

*Opinion filed March 17, 1942—Rehearing denied May 13, 1942.*

PAUL F. WANLESS, and J. THOR WANLESS, for appellant.

J. W. TEMPLEMAN, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

In July of 1933, Caroline A. Hargraves was the owner of property in Springfield, a dwelling which was worth about $3000. She was then past 81 years of age and died in August of 1934. In October of 1934, her daughter and only heir, Irene Gillock, who is the appellee herein, filed her complaint in equity seeking to set aside a deed which her mother had made at the time first above mentioned. The ground upon which equitable relief was sought was that Caroline Hargraves lacked the mental capacity necessary to make a deed.

This deed was dated July 7, 1933, and conveyed the dwelling-house in question to the appellant, William J. Holdaway, in fee simple, but reserving a life estate to the grantor. The circumstances under which this transaction

occurred were fully proved by the stenographer in the office of the attorney who handled it, and this testimony is not disputed by any competent evidence. The attorney in whose office this transaction took place was not called as a witness, nor his absence accounted for by either party. He was never an attorney of record in this suit. This stenographer testified that Mrs. Hargraves had been in the office a half dozen times before the deed was made and that on the day of the transaction she came there with appellant; that after a conference in the attorney's private office, he, the attorney, came out and dictated a mortgage to be signed by Mrs. Hargraves. This mortgage was presented to the deceased, who said, "this is a mortgage, I don't want a mortgage," and then explained to the attorney that she wanted to give the property to Mr. Holdaway. The attorney then explained to her that if she made a deed she could protect her interests by reserving a life estate, and this was the way it was done. The stenographer testified she wrote the deed, that the attorney carefully explained it to Mrs. Hargraves, and that after such explanation it was signed and acknowledged by this witness, who was a notary public. This is the only direct evidence concerning the actual transaction.

It is necessary to revert to a history of the pleadings and the course of the litigation. As above noted the original complaint was filed October 23, 1934. Appellant, who was a non-resident, answered it 46 days afterwards on December 8, 1934. He denied any want of capacity on the part of the grantor, admitted that he was a nephew of the grantor, admitted that the consideration of the deed was his truthful representation that he would support the grantor for life because she was his mother's sister, and admitted he had received $240 income from the property and paid out $203 in expenses. For some reason entirely unexplained this cause was permitted to lie dormant in the circuit court for nearly six years, and it was not until March 1, 1940, that an order of reference was taken.

Thereafter, on May 22, 1940, the attorney who had filed the suit withdrew as solicitor, and although no entry of appearance is in the record, present counsel seem to have carried on from that date. The taking of evidence before the master began in May and continued through the summer and fall. On December 10, 1940, the plaintiff shifted her position by an amendment to her complaint. In this amendment she charged that the deed in question, although absolute on its face, was in fact a mortgage and intended only for security for moneys advanced and to be advanced, and that there was an agreement between the old lady and her nephew that he would reconvey the property on receipt of moneys due him. It must be pointed out that there is no evidence even remotely sustaining this theory.

The master in chancery made inconsistent alternative findings, which were sustained by the chancellor. He found that the deceased was incompetent to transact business, and that the conveyance should be set aside and further found that if she was competent to transact business the deed in question was at most a mortgage, intended as security for moneys advanced and to be advanced. The decree appealed from followed the same lines and ordered an accounting.

From a reading of the record, it is apparent that the appellee was forced to abandon the grounds of her first complaint, as there is no sufficient evidence to prove that the grantor was mentally incompetent. Whether or not she was forced to abandon this position, the fact is that technically she did so when she filed the amendment to her complaint, because it is impossible that a person could be competent to make a mortgage while incompetent to make a deed. Without evidence to sustain any theory of a mortgage she thus amended herself out of court.

It is apparent from the record that the master in chancery and the chancellor gave some weight to two incompetent pieces of evidence which were admitted. One of these was a letter or a memorandum, claimed to be in the

handwriting of Mrs. Hargraves and in possession of the plaintiff. Its general purport was to the effect that she wanted her property back so she could call it her own. This memorandum was neither signed nor dated, and was never delivered to the appellant, and there is no conceivable theory of evidence upon which it could be binding on him nor admissible against him. The other exhibit was a letter from the appellant's mother to Mrs. Hargraves with which the appellant had nothing to do, and which could not be used against him in any event. *City of Chicago* v. *McKechney*, 205 Ill. 372.

When one asserts that a deed absolute in form is in fact a mortgage, he assumes the burden of establishing that allegation by clear, satisfactory and convincing proof. *Totten* v. *Totten*, 294 Ill. 70; *Helm* v. *Boyd*, 124 id. 370; *Friend* v. *Beach*, 276 id. 397; *Robnett* v. *Miller*, 303 id. 515.

The plaintiff in this case abandoned her first theory and failed to prove the second one. A proper decree in the circuit court would have been one dismissing the bill of complaint for want of equity, and since this was not done the decree which was entered must be reversed.

*Decree reversed.*