(No. 31199.

VICTORIA C. STENWALL, *et al.*, Appellants, *vs.* RALPH W. BERGSTROM *et al.*, Appellees.

*Opinion filed January 18, 1950—Rehearing denied March 20, 1950.*

CLIFFORD A. PEDDERSON, and JOHN F. HALL, both of Rockford, for appellants.

THOMAS & DAVIS, of Rockford, (CHARLES S. THOMAS, of counsel,) for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Appellants filed their complaint November 28, 1945, in the circuit court of Winnebago County, seeking partition and an accounting as to certain real estate, hereinafter referred to as the "Forest Hills" property, in Rockford. On motion by the appellees to strike, the complaint as amended was stricken. An appeal was taken from that order to this court and the cause was reversed and remanded, with direc-

tions to overrule the motion to strike and require the defendants to answer the complaint as amended. (398 Ill. 377.) An answer was filed, and on the issues formed a trial was had before the chancellor, who found for the appellees and entered a decree dismissing the suit for want of equity. Appellants appeal to this court, a freehold being involved.

The principal facts as disclosed by the record are as follows: In 1921, Adolph Bergstrom and his wife conveyed the "Forest Hills" property to Adolph's mother, Ellen Bergstrom, by warranty deed, subject to a mortgage to the Rockford Life Insurance Company, in the amount of $4500. In 1924, the property became vacant and the mortgagee requested of Ellen Bergstrom that it be occupied. Ellen requested her son, Ralph Bergstrom, to move into the property, which he did. The rent agreed upon was $27 per month. Later it was found that this amount would not pay taxes and interest on the mortgage and it was raised to $35 per month. Ralph was a traveling salesman and was away from home a large part of the time, and his dealings with respect to the payments of rent were with Adolph Bergstrom, his brother, who acted for their mother, Ellen. The payments of rent were made, not regularly, but in amounts sufficient to take care of interest, taxes and other charges, when and as they came due, Adolph notifying Ralph and he turning over the money. Adolph then actually paid the various charges for his mother.

In 1929, Ellen Bergstrom owned another property called the "Rock View" property, against which there stood a mortgage of $9000, and one for $3333.45. This latter was evidenced by a note of Ellen's due February 7, 1930. The note was signed by Ellen, and three of her sons, Ralph, Adolph and J. Arthur Bergstrom. Being in financial difficulty, Ellen asked Ralph Bergstrom to pay the $3333.45 note, on which he had previously paid certain payments of interest. Ellen conveyed the "Rock View" property to

Ralph for the undisputed purpose of saving it from loss through foreclosure. The "Rock View" property shortly became vacant and produced no income. Ralph discussed this with his mother and it was arranged that she would convey to Ralph the "Forest Hills" property, which is the property in controversy here, and that he assume to pay the $4500 debt against it. The value of this property at that time was about $7500. Thereafter the mother executed a warranty deed to this property to Ralph which bears the date of January 25, 1930, and which was acknowledged by her on February 6, 1930. The disposition of this deed thereafter is in dispute, but it was recorded by Ralph on April 14, 1937. Ellen Bergstrom died on December 24, 1937, at the age of 82 years. After the date of the deed in 1930, Ralph continued to pay sufficient money to Adolph to take care of the various charges in the same way as before the deed. In 1932 the "Rock View" property was lost through foreclosure of the $9000 mortgage, but the evidence shows that Ralph paid the $3333.45 note against it that Ellen had asked him to assume in 1929.

In 1935, Ralph left his job as a traveling salesman and thereafter he paid the interest, taxes and other charges against the "Forest Hills" property himself, as they came due. He kept a record book during this time in which he entered payments made and credited against them $35 each month under an entry "Rent." On the trial he explained the entries of rent were simply to keep himself informed as to the amount he had invested in the property and that he never paid any of the entries of "Rent" to anyone.

In 1934, it appears that a suit was brought against Ellen Bergstrom, as owner and Ralph Bergstrom as tenant, and others, seeking partition and accounting as to the "Forest Hills" property. The claim in that suit was by the former wife of Adolph of an interest in the property remaining in her at the time it was conveyed to Ellen Bergstrom in 1921. The answer filed in that case does not deny Ralph's

status as tenant, but the suit was settled by Ralph paying to the claimant $2000, for which she executed a quitclaim deed to him.

During the years following 1935, Ralph Bergstrom continued to pay all charges against the property and by 1944 had paid off the $4500 mortgage and the property was clear. While the mortgage remained on the property taxes were levied in the name of Ellen Bergstrom until 1937, at which time the levy was changed to Ralph's name.

There is no evidence that after 1930, Ellen Bergstrom or anyone for her ever exercised or asserted any right to exercise any control over the property. Nor did any one request Ralph to account for his occupancy of the property. After the property was clear, the appellants, who are the children of Ellen, discussed the status of the property with Ralph and claimed an interest as heirs. Ralph offered to let them have it for what he had in it, which was around $10,000. This deal was never consummated. The property now has an appraised value of $15,000 to $18,000.

The principal controversy arises by reason of the events as above set forth and over testimony in the lawsuit that Ralph Bergstrom, at various times after 1930 admitted that his mother, and, after her death, the appellants, as her heirs, had an interest in the property. The record discloses that in 1942 the estate of Ellen Bergstrom was administered by J. Arthur Bergstrom, one of the plaintiffs in this suit, as administrator. The inventory filed therein does not list the property involved here as being a part of Ellen Bergstrom's estate, nor was any claim of such an interest made by the administrator in those proceedings.

Appellants assume that Ralph Bergstrom occupied the premises as a tenant and that the property was Ellen Bergstrom's at her death and descended to her heirs, some of whom are the appellants, because (1) the deed of 1930 was never delivered and therefore was of no effect, or (2) that, if it was delivered it constituted a mortgage only

and that Ralph Bergstrom holds title in constructive trust for the heirs of Ellen Bergstrom.

The controlling questions thus presented are (1) Was the deed delivered? (2) If so, do the circumstances surrounding its delivery raise a constructive trust in favor of the heirs of Ellen Bergstrom?

Appellants contend the finding of the chancellor as to the delivery of the deed to the property in 1930 is against the manifest weight of the evidence and that the deed was never delivered. They point to the rules that an undelivered deed is of no effect and that the question of delivery depends upon the facts and circumstances in each case. (*Staufenbiel* v. *Staufenbiel,* 388 Ill. 511.) There can be no question about the rules. The only question presented is that of delivery. It is undisputed the deed was executed, acknowledged and placed in the hands of Adolph Bergstrom by Ellen Bergstrom in 1930. Adolph Bergstrom testified it was delivered to him by Ellen Bergstrom after its acknowledgment, with directions to deliver it to Ralph Bergstrom. That he notified Ralph to come to the store, which he was operating, and pick it up, which Ralph did shortly thereafter and took it away. Ralph testified to the same facts, and that he put it in his safe and kept it there until 1937, when he ran across it while examining the insurance policy he had on the property; that the insurance agent called his attention to the fact it had not been recorded, volunteered to have it recorded for him and did so. The fact it was recorded April 14, 1937, is not disputed.

Evidence of nondelivery consists only of the testimony of appellant J. Arthur Bergstrom that in 1933 or 1934, while he and Adolph were going through a drawer at the store, he saw the deed, remarked that it was no good, and that Adolph agreed. Adolph denied that the deed was in the drawer and testified that the paper referred to was a will of Ellen Bergstrom. Appellants point to the seven-years' lapse between the execution and recording of the

deed as being corroborative of J. Arthur Bergstrom's testimony, and that it is manifestly proved thereby that there was no delivery. They rely on the case of *Staufenbiel* v. *Staufenbiel,* 388 Ill. 511. That case is not in point for factual differences existed there. Here, the evidence is undisputed except that of manual delivery from Adolph to Ralph, and on that point there seems to be credible evidence of delivery.

Appellees cite the case of *Pure Oil Co.* v. *Bayler,* 388 Ill. 331, and contend that where a deed is executed, acknowledged and recorded, it is presumed to have been delivered, and that whoever questions the fact of delivery under such circumstances must assume the burden of overcoming the presumption by clear and convincing evidence. And they cite *Campbell* v. *Campbell,* 368 Ill. 202; *Johnson* v. *Fulk,* 282 Ill. 328; *Potter* v. *Barringer,* 236 Ill. 224. Applying this rule to the evidence in the instant case, it is apparent the appellants' contention that the finding of delivery below was against the manifest weight of the evidence is of no avail. There is ample evidence here of delivery and such evidence as there is of nondelivery is far from clear and convincing.

Appellants then contend that the manifest weight of the evidence shows that a fiduciary relation existed between Ellen and Ralph Bergstrom and that the purported deed was intended to be a mortgage; and that where a fiduciary relationship is established, the burden is on the one profiting from the transfer of property to show, by clear and convincing evidence, that it was procured fairly and without the exercise of undue influence. *Staufenbiel* v. *Staufenbiel,* 388 Ill. 511; *Sawyer* v. *Creighton,* 403 Ill. 364.

Appellees do not dispute these rules but cite *Stewart* v. *Sunagel,* 394 Ill. 209, where it was held that a fiduciary relation does not exist between parent and child as a matter of law and to warrant setting aside a conveyance because of it requires proof of facts raising such a relation

by evidence clear and convincing and so strong, unequivocal and unmistakable as to lead to but one conclusion. To the same effect are *McGlaughlin* v. *Pickerel,* 381 Ill. 574, and *Johnson* v. *Lane,* 369 Ill. 135. The elements of a fiduciary relation have been defined in many decisions of this court as consisting of confidence reposed on one side and resulting domination and influence on the other. *Dyblie* v. *Dyblie,* 389 Ill. 326; *Burroughs* v. *Mefford,* 387 Ill. 461; *Fisher* v. *Burgiel,* 382 Ill. 42; *Johnson* v. *Lane,* 369 Ill. 135.

The substantial question on this contention of appellants is whether the evidence in the case establishes a fiduciary relationship between Ellen Bergstrom, grantor, and Ralph Bergstrom, grantee, in this deed. As to the question of dominance, there is nothing whatever to show that in the relations Ralph dominated his mother or managed any of her affairs, except that he undertook to assume her debts at her request.

We have analyzed carefully the voluminous testimony of the parties in regard to the relations between Ralph and Ellen, including the question of dominance, and, without burdening this record with all of its details, we are of the opinion the controlling elements of a fiduciary relationship are absent.

Appellants at great length refer to various details and circumstances following the date of the deed, and urge, among other things, that Ralph's failure to record the deed until 1937 is indicative of his understanding that he held only a mortgage, and that the various transactions point to that fact. They point out that the notes assumed by Ralph remained in the name of Ellen, were not cancelled, and that those circumstances create a presumption that the deed was a mortgage. They rely on the case of *Wallace* v. *Greenman,* 321 Ill. 423. That case contains entirely different facts, and the holding there relied on is that where a grantor at the time of making a deed is indebted to the grantee, and the grantee retains the note evidencing the

debt, the presumption is that the deed, though absolute on its face, is a mortgage. The facts and circumstances here are not at all comparable and the facts here do not justify the application of that rule.

Appellees urge the rule that where a deed is absolute in form, whoever asserts it is in fact a mortgage, has the burden of establishing that allegation by clear and convincing proof. (*Tepper* v. *Campo*, 398 Ill. 496; *Gillock* v. *Holdaway*, 379 Ill. 467.) The only direct evidence of Ellen's intention at the time she made the deed is Adolph's testimony that he was present and that Ellen said the deed was to take care of Ralph and that it was understood to be an absolute deed. There is no evidence of oppression, fraud or undue influence being exercised by Ralph. The evidence clearly shows he has paid out, in the course of the transactions controverted, more money than the property was worth at the time of the deed; that Ellen was of sound mind at the time and had had sufficient experience to know the import of a warranty deed. The decree is not against the manifest weight of the evidence in this respect.

Appellants finally urge error in the exclusion of evidence. In each instance complained of, the evidence was either repetitious or was incompetent to prove any material issue in the case. There is no reversible error in this respect. Appellees refer to the well-settled doctrine of this court that where the evidence is in dispute, and where the chancellor saw and heard the witnesses testify, his findings will not be disturbed unless they are against the manifest weight of the evidence. *Chmiel* v. *Chmiel*, 399 Ill. 91; *Rice* v. *United Mercantile Agencies*, 395 Ill. 512; *Miller* v. *Pettengill*, 392 Ill. 117.

From our analysis of the evidence in this case, we are of the opinion the decree of the circuit court is not manifestly against the weight of the evidence, therefore it is affirmed.

*Decree affirmed.*