(No. 5024— )

STATES IMPROVEMENT COMPANY, INC., an Illinois Corporation, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 10, 1967.*

ROTHSCHILD, HART, STEVENS AND BARRY, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PEZMAN, J.

This action arises out of a contract entered into between claimant, States Improvement Company, Inc., an Illinois Corporation, and respondent, the State of Illinois, wherein claimant agreed to erect a certain steel I-beam bridge and approaches at a point approximately one quarter of a mile from the City of Decatur, County of Macon, State of Illinois.

Claimant contends that, due to the manner specified in said contract for the installation of piles, and the soil conditions existing at the time the contract was en-

tered into, it was impossible to perform the contract, and that the State of Illinois wrongfully defaulted claimant to the damage of the sum of $320,810.59. Respondent did not file an answer to the complaint, so a general denial of the facts, as set forth in the complaint, prevailed.

The contract, which is the subject matter of this suit, sets forth specifications to be employed for the construction of concrete piles. Piles, which were manufactured by Raymond International, Inc., met the specifications, and were the piles used. The evidence shows that these were pre-stressed concrete piles. The contract further provided for the method of installation, which method was stated to be as follows:

"(d) Installation.

The piles shall be installed in accordance with one or more of the following procedures.

"(1.) Driving—The piles shall be driven with a steam hammer, which shall develop not less than forty thousand (40,000) foot-pounds of energy per blow at full stroke. A solid hardwood cushion block at least six (6) inches thick shall be used in the base of the hammer to cushion the blow of the hammer ram on the follower. A laminated ring-shaped cushion block, at least six (6) inches thick, made of one (1) inch hardwood boards and cut to fit the head of the pile shall be used between the follower and the top of the pile. Both cushion blocks shall be inspected periodically during driving, and no driving shall be done with blocks that have been unduly worn and compacted with use. When the point of the pile is passing through soft soil, and there is little or no resistance to penetration, the stroke of the hammer shall be reduced to approximately twenty-four (24) inches. When the point of the pile is being driven in firm ground, the full length of the stroke of the hammer shall be used to develop final resistance, but in no case shall the strokes exceed forty-two (42) inches. Piles shall be driven to the resistance determined by the Engineer.

"(e) Jetting and Driving.

> In granular soils, jetting will be permitted in conjunction with driving, except that final penetration shall be attained without the use of jets. After jetting is stopped, the pile shall be driven to the elevation designated by the Engineer. Care shall be exercised during jetting that no internal hydrostatic pressure greater than twenty (20) psi does not build up within the pile. Internal jetting will not be permitted unless specifically authorized in writing by the Engineer."

On or about April 5, 1959, claimant commenced work on this project. In the month of August, 1960, claimant was ready to commence the installation of the concrete piles. From August 1 to August 15 of that year attempts were made to drive the piles to the proper elevation, but claimant was unable to do so, even though attempts were made to overdrive the piles. The contract provided that the Resident Engineer would have sole authority to determine the maximum number of hammer strokes per inch, which could be utilized in driving the piles. Despite the prior order of the Resident Engineer that driving should not proceed beyond ten blows per inch, the Resident Engineer directed that the first pile be overdriven. After the use of twenty-eight blows per inch, only one additional inch of penetration was achieved. Claimant then requested permission to use air jets in an effort to assist the driving of the piles to a lower elevation, and such jets were put into operation. With the use of the jets there was still no noticeable improvement in the driving of the piles. Work was finally halted on this project on August 19, 1960.

Subsequent to this work stoppage, claimant requested permission to excavate within the pile, and further stated that, if the new method was more expensive, he would expect additional pay. However, the request was turned down, and finally, on September 20, 1960, the

Director of Public Works and Buildings of the State of Illinois sent claimant a ten day notice to comply or a default would be taken. Claimant obtained an injunction from the Circuit Court of Cook County against the Director restraining him from defaulting the contract. This injunction remained in effect until February 27, 1961, when the injunction was dissolved. The State of Illinois then readvertised the contract, and it was relet to the C. E. Burgett Construction Company.

The new contractor retained the services of Raymond International, Inc., as a sub-contractor to install the piles. Raymond International, Inc., then proceeded to install the piles through the use of an airlift device, which is described by claimant as a method of internal excavation, and described by respondent as a method of internal jetting.

Claimant contends that it could not deviate from the contract's specifications without authority from the State, and that, because of the particular soil conditions encountered in driving the piles, the piles could not be installed in accordance with the specifications of the contract. Claimant further contends that respondent, the State of Illinois, subsequently allowed Raymond International, Inc., to use a form of internal excavation in installing the concrete piles. Claimant further contends that, since the State had prepared the specifications for the installation of the piles, it had a duty, when it became apparent that the contract could not be performed in accordance with such specifications, to allow claimant to use other methods of installing the piles. In addition, claimant argues that, when the State refused to change the specifications, it was excused from further performance on the grounds of impossibility.

The pertinent questions in this case are:

1. Did the State have the legal right to terminate claimant's contract?

2. If it did not, what damages, if any, are recoverable by claimant?

The contract in this case set forth the type of piles to be installed, and further provided for the method of installation. The State of Illinois prepared the specifications, and it is clear that claimant was required to install the piles in the manner expressly set forth in the contract. This contract is known in the Industry as the "specified manner and method" contract, rather than as an "end result" contract. From the testimony in this case, it appears that this was an unusual agreement, but nevertheless it existed in this instance.

Mr. Alexander Riff was called as a witness by respondent. Mr. Riff testified that he was an employee of Raymond International, Inc., and was well acquainted with the piles to be installed, inasmuch as his company manufactured this concrete pile. Mr. Riff testified that, in his opinion, there was a possibility of installing the piles by a method of hammering and jetting as specified in the contract, but, while possible and feasible, such a method was not practical. Mr. Riff went on to testify that, after the contract was relet, Raymond Intenational, Inc., used a combination of hammering and air-lift to drive the piles. Mr. Riff testified that from an engineering standpoint the method used by Raymond International, Inc., to install the piles was a form of excavation.

Mr. Carter Jenkins of Springfield, Illinois, was called as a witness by claimant. He testified as to his background, and qualified as an expert witness. Mr.

Jenkins stated that the Director of the Department of Public Works and Buildings of the State of Illinois, W. J. Payes, had on or about June 14, 1961, requested him to make a survey of this project, and make a report of his findings. Mr. Jenkins testified that, in his opinion, the piles could not have been installed, placed or driven by using the methods outlined in the specifications of the contract regarding that particular type of work.

Director W. J. Payes testified in behalf of claimant. His testimony, in substance, was that claimant was not permitted to install the piles by internal excavation, but that, after the contract with claimant was terminated, and another one obtained, the new contractor was permitted to install the piles by internal excavation.

From the testimony in this case, it appears to the Court that the methods set forth in the contract for the installation of these piles could not have been followed, and that by and under the terms of the contract claimant was limited to the methods specified therein, and could not deviate from the provisions thereof without the permission of respondent, the State of Illinois.

The law on the subject of impossibility and the effect of impossibility to perform a contract, as agreed, appears to be clear. *Corbin on Contracts,* Vol. 6, Sec. 1332, states as follows:

"A distinction has been drawn between........ the personal inability of a promisor to do what he promised and the objective impossibility that the promised performance can be rendered by anyone. The two terms call attention to a distinction between two kinds of facts that are very different in their legal operation.

"Objective Impossibility........ may discharge a contractor from his duty......The duty of a promisor is never discharged, however, by the mere fact that supervening events deprive him of the ability to

perform, if they are not such as to deprive other persons, likewise, of the ability to render such performance."

Chap. 14, Sec. 454, of *Restatement of Contracts*, states:

"Impossibility means not strict impossibility but impracticable because of extreme and unreasonable difficulty, expense, injury or loss involved."

Sec. 456 of *Restatement of Contracts* states that:

". . . . . . a promise imposes no duty, if performance of the promise is impossible because of facts existing when the promise is made of which the promisor neither knows nor has reason to know."

The definition of impossible, as set forth in the *Restatement of Contracts*, has been upheld by the Illinois courts in *Fisher* vs. *United States Fidelity and Guaranty Company*, 313 Ill. App. 66, 39 N.E. 2d 67 (1942).

Thus, it appears that under the laws of the State of Illinois the method required by the contract for the installation of the piles in the instant case was legally impossible of performance, and that claimant was thereby excused from its performance thereunder. It, therefore, necessarily follows that the State of Illinois improperly defaulted claimant.

We now turn our attention to the question of damages, if any, recoverable by claimant. The Bill of Particulars pertaining to damages, which was filed in this suit, shows that claimant received cash in the sum of $192,134.25. There was no dispute as to the amount received.

Claimant, in its Bill of Particulars, sets forth certain items chargeable to this project, the time various items were on the job, the monthly rate, loss of profit, and the total loss of $320,810.59 after allowing credit for the $192,134.25 received. Of the items listed in the Bill of Particulars, one is for an office trailer, which allegedly was on the job twenty months, and charged at

the rate of $100.00 per month. The evidence does not sustain the burden of proof to show that this was for the benefit of the State, and therefore, this item of $2,000.00 is disallowed.

Certain other heavy equipment is allegedly on the project for twenty months. However, a portion of that time was for the period during which the injunction obtained by claimant was in effect. In the judgment of this Court, claimant should not benefit for this period of time, and, therefore, the Court reduces those items listed in the Bill of Particulars as having been on the project for twenty months to seventeen months. It is the opinion of this Court that claimant should not benefit for said time period when, through its own action, it prohibited work on the project. This Court, therefore, arrives at the total figures as follows:

| ITEM | QUANTITY | TIME | RATE | AMOUNT |
|---|---|---|---|---|
| Lima 802 Diesel | 1 | 17 Months | 4,354.00 | 74,018.00 |
| HD 21 Dozer | 1 | 17 Months | 3,778.00 | 64,226.00 |
| D-6 Dozer | 1 | 17 Months | 1,268.00 | 21,556.00 |
| 977 Loader | 1 | 17 Months | 1,743.00 | 29,631.00 |
| 600 CFM Compressors | 2 | 8 Months | 897.00 | 14,352.00 |
| Pump, High Pressure | 1 | 8 Months | 360.00 | 2,880.00 |
| Pump, 8″ Centrifical | 1 | 8 Months | 328.00 | 2,624.00 |
| D-7 Dozer | 1 | 17 Months | 1,737.00 | 29,529.00 |
| | | | | $238,816.00 |
| 50% of AED Rates | | | | $119,408.00 |
| White 10 Cy 6 Wheel Trucks | 8 | 11,666 Hours | 4.63 | 54,013.58 |
| Material and labor | | | | 207,148.56 |
| Percentage of payroll to cover union dues, insurance and other expenses | | | | 20,898.41 |
| | | | TOTAL | $401,468.55 |
| | Prior payment on contract—Less | | | 192,134.25 |
| | | | Balance | $209,334.30 |

It is the opinion of this Court that the impossibility of performance of this contract, due to the fact that claimant was required to use only those methods specified in the contract for driving piles, discharges claimant from its duty, and, in turn, frees the State from further duty under the contract. It is the further opinion of this Court that in such a situation the law seeks to place the people in the same condition as they were prior to entering into the agreement.

Sec. 468 (d) of *Restatement of the Law of Contracts*, American Law Institute, states as follows:

"Since there is no fault on either side, the loss due to impossibility or frustration must lie where it falls. Neither party can be compelled to pay for the other's disappointed expectations, but, on the other hand, neither can be allowed to profit from the situation. He must pay for what he has received. The amount he must pay in gauged by the extent that what he has received forwards the object of the contract. If the contract was an unwise one from the standpoint of the one who has received performance, this does not limit his duty to pay. If, on the other hand, the contract was a disadvantageous one from the standpoint of the one rendering the performance, he cannot recover for what he has done on a more profitable basis than the contract affords."

Thus, claimant is not entitled to any profit from this project, and, therefore, this Court has disallowed claimant's alleged profit of $44,101.59, and also the sum of $31,072.28 representing 15% of the charges for material and labor, which claimant also alleges as part of the profit due on this job.

Claimant is hereby granted an award in the amount of $209,334.30.