JOSEPH W. O'BRIEN COMPANY *et al.*, Plaintiffs-Appellees, *v.* HIGHLAND LAKE CONSTRUCTION COMPANY *et al.*, Defendants.—(LOREN SCOTT, Defendant-Appellant.)

(No. 58345;

First District (4th Division)—January 16, 1974.

238

Kirkland and Ellis, of Chicago (Donald J. Duffy, of counsel), for appellant.

O'Keefe, Ashenden, O'Brien & Hanson, of Chicago (James H. O'Brien, of counsel), for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This action was brought to recover damages allegedly sustained by plaintiffs as a result of the breach of a written contract entered into between the plaintiffs, a joint venture, and the defendants, Loren Scott and Highland Lake Construction Company. The court directed a verdict in favor of plaintiffs and against the defendant, Loren Scott, at the close of all the evidence on the question of liability and the jury returned a verdict assessing plaintiffs' damages at $25,000. The court entered judgment on the verdict from which this appeal is taken.

The issues presented for review are (1) whether the trial court erred in granting the plaintiffs' motion for a directed verdict at the close of all the evidence, (2) whether the court erred in excluding certain documentary evidence offered by the defendant, and (3) whether the court erred in admitting into evidence certain documentary materials offered by the plaintiffs.

The evidence reveals that the plaintiff companies, a joint venture, entered into a general contract with the County of Cook in March, 1967, which contract called for the installation by plaintiffs of approximately 2000 feet of storm sewer in the west leg of the main drain of the Dan Ryan Expressway. On June 16, 1967, the plaintiffs, as general contractors, entered into a written subcontract wherein Scott and Highland Lake, the defendants and subcontractors herein, agreed to perform a certain portion of the sewer pipe installation called for in the general contract.

Most of the installation could be done by the plaintiffs by trenching or open cut method of installing the sewer pipe. But at certain specific locations where the Dan Ryan Expressway crossed certain roads, and where traffic could not be disrupted, the sewer pipe had to be tunneled underneath by means of a method known as "jacking." This method involves the digging of a pit in which huge hydraulic jacks are placed, which exert pressure on a cement pipe in order to literally force it

through the soil from one point to another. The defendants subcontracted to perform the installation at these locations, under the Dixie Highway at 147th Street and under the tollroad.

In July of 1967 the defendants Scott and Highland Lake dug a jacking pit in the area of the Dixie Highway and commenced jacking pipe under that road. One hundred and seventeen feet of pipe was jacked under Dixie Highway. The resident Cook County Highway Department engineer on the job stopped that portion of the job in August 1967 because he found that 37½ feet of pipe that had been jacked by the defendants was off line and grade and completely unsatisfactory.

The defendants were directed to remove their jacking equipment from the Dixie Highway site and commenced jacking at a second site at the tollroad. They immediately encountered water and adverse soil conditions. No pipe was jacked by them at the tollroad site from September 6, 1967, until the latter part of October, 1967. At about that time the last employee of the defendants left the site and never returned.

In the interval before defendants left the second job site in October of 1967, plaintiffs went to the original site at the Dixie Highway where 117½ feet of pipe was installed, opened the ground by an open cut method, removed 37½ feet of the pipe, dug deeper and re-installed pipe to the proper line and grade. They used their own men and equipment to correct and complete the work project originally undertaken by the defendants. The plaintiffs' employees thereafter took over the attempts to jack pipe at the second location under the tollroad in the first week of November, 1967. No pipe was jacked in place by the plaintiffs until January 11, 1968, for various reasons, including the condition of the soil, the insistence by the Toll Highway Commission that a crossover be constructed in December of 1967, and the Christmas holidays, during which time the Toll Highway Commission did not wish its tollroad to be threatened. In January of 1968, the plaintiffs were able to jack 84½ feet of pipe at the tollroad site, but then changed the method of operation because the pipe was cracking up under earth pressures. The remainder of the total 195 feet to be installed was done by plaintiffs using a different method of installation known as "poured monolithic," which is the pouring of concrete inside the tunnel to form the pipe.

The plaintiffs sued defendants for damages sustained in (1) first removing and then replacing the 37½ feet of pipe jacked by defendants at the Dixie Highway site which was off line and grade, and (2) jacking the 84½ feet of pipe at the tollroad site, where the defendants had been totally unable to jack any pipe at all. The plaintiffs made no claim for damages relating to their installation at the tollroad site of the remaining 195 feet of pipe, which they accomplished not by jacking but by

using the poured monolithic method. The jury by its verdict assessed the damages in the amount of $25,000.

As we stated, the court directed a verdict in favor of plaintiffs and against the defendant Scott on the issue of liability, citing as its grounds the case of *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504. The defendant filed as an affirmative defense an amendment to his answer raising the issue that the jacking of pipe was impossible according to the specifications of the contract. The defendant based this defense on the theory that performance was impracticable because of extreme and unreasonable difficulty and expense unanticipated by defendant. He submits that because of that issue alone the trial court should have allowed the issue of liability to go to the jury and clearly erred in directing a verdict in favor of the plaintiffs.

The plaintiffs place their claim first on the fact that they not only did the work of jacking the 37½ feet of pipe at the Dixie Highway site which defendant was subcontracted to perform, but they also were put to the expense of removing the pipe previously installed by the defendant because it was on the wrong line and grade. In this instance the defendant did not assert that there was extreme or unreasonable difficulty encountered in performing under the contract. Indeed, the defendant was clearly able to jack in the pipe, but merely did a portion of the job unsatisfactorily.

The plaintiffs also had to undertake the work of jacking in place 84½ feet of pipe at the tollroad on the Dan Ryan Expressway. The defendant claims that the jacking of pipe at this site was impossible according to the specifications of the contract because the adverse soil conditions created extreme earth pressure which caused the pipe to crack in the tunnel. The defendant feels that this issue of impossibility should have been left for the jury. The trial court rejected this assertion and we are in accord.

■■ It should first be re-emphasized that the plaintiffs seek no damages for the remaining footage out of the total 195 feet which the plaintiffs installed at the second site by utilizing a different method, *i.e.*, poured monolithic. Plaintiffs seek to get damages only for the 84½ feet of pipe which they were actually able to jack into place contrary to defendant's efforts. Under the traditional concept of impossibility, the result is clear. If the plaintiffs themselves were able to accomplish what the defendant asserts was impossible, regardless of the difficulty encountered, then ipso facto performance was not impossible and the defense is non-meritorious.

The defendant, however, calls for the application of a more liberal concept of impossibility. He calls our attention to the case of *Fisher v.*

*United States Fidelity & Guaranty Co.,* 313 Ill.App. 66, 39 N.E.2d 67, where the court cited at page 72 (39 N.E.2d at 70) the language of the Restatement of Contracts § 454 (1932) to the effect that "impossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." The court also quotes the language of 6 Williston on Contracts, § 1931, p. 5407, 5411 (Rev. ed. 1938) that:

> " '* * * The true distinction is not between difficulty and impossibility. A man may contract to do what is impossible, as well as what is difficult, and be liable for failure to perform. The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promissor.' " 313 Ill.App. at 73-74, 39 N.E.2d at 71.

The defendant contends that even if plaintiff was able to jack 84½ feet of pipe in place, this does not necessarily mean that the installation was done without "extreme and unreasonable difficulty, expense, injury or loss" due to unanticipated circumstances, *i.e.,* the soil conditions. And if this is so, the defendant might still assert a valid impossibility defense under the facts here.

But defendant first assumes that the application of this more liberal defense of impossibility would require the case to at least go to the jury under the facts presented. This assumption we choose not to evaluate here. More fundamentally, he feels that his presentation of the law of impossibility is the proper one to govern the litigation. We note the possible desirability of applying this rule in certain hardship situations. But under the facts presented, we feel constrained to apply the well-established rule of impossibility as clearly adopted by the Illinois Supreme Court in *Leonard v. Autocar Sales & Service Co.,* 392 Ill. 182, 64 N.E.2d 477, *cert. denied,* 327 U.S. 804, *rehearing denied,* 328 U.S. 878, 879. In that case the court stated that the general principles governing the construction and enforcement of contracts "is that where parties, by their own contract and positive undertaking, create a duty or charge upon themselves, they must abide by the contract and make the promise good, and subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end." The court then noted that "[t]his doctrine has been often announced by this court," citing numerous examples thereof. 392 Ill. at 187, 64 N.E.2d at 479.

Applying this rule to the present cause, it can readily be ascertained

that the contract in question created a duty of performance upon defendant Scott to jack certain pipe in place. He was required to make good that promise of performance. He failed to provide for any contingencies, for any circumstances whatsoever, that might make performance of the contract onerous and he therefore must perform under its terms. His failure to do so put him in breach of his promise of performance. The plaintiffs themselves were compelled to render the performance which defendant found too difficult.

Defendant also contends that the termination of his work should be attributed to his dismissal by the plaintiffs by reason of some time limitation which is not a part of the contract. Defendant testified that Joseph O'Brien of the Joseph W. O'Brien Co., one of the plaintiff general contractors, had a conversation with him sometime in November, 1967, and informed him that the plaintiffs were "taking the job over because you will not get it done in time." Defendant asserts that there is no time limitation in the subcontract and thus suggests that his decision to quit the work was precipitated by the alleged direction of the plaintiffs under the authority of some non-existent time limitation.

■■ We have examined the transcript of evidence and are in no way persuaded by defendant's contention. There was a time limit within which plaintiffs' general contract with the county was to be completed. In the subcontract the defendants acknowledged that they were familiar with the terms and conditions of the general contract entered into between the plaintiffs and the County of Cook and that they undertook the job under those terms and conditions. At paragraph 16 of the same subcontract, the subcontractor is required to diligently perform his work on a progress schedule required by the contractor and that upon failure to do so the contractor shall take over the work and complete the job. The plaintiffs did just that. Furthermore the evidence shows that only after the defendants had the job in a no progress status from August to the latter part of October, 1967, and after the last of defendants' employees had left the job site at that time, did the plaintiffs take over the work project in November and complete it.

The next issues raised by defendant relate to rulings by the trial court on the admission of certain documentary evidence.

The defendant first contends that the trial court erred in sustaining plaintiffs' objections to the intoduction of defendant's exhibit four, a letter written by the plaintiffs to the superintendent of highways for the County of Cook and dated June 16, 1971. The letter was a request by plaintiffs, the general contractors, for reimbursement from the county for the additional costs incurred by plaintiffs in completing the work

project at the tollway site by means of the more expensive monolithic method of installation.

The letter narrated the history involved in the plaintiffs' attempts to determine the soil conditions in the area of the tollroad prior to the time they entered into the contract with Cook County. The letter related to the superintendent of highways the following: The only information available to the contractor prior to bidding were two Cook County Highway Department soil borings taken 90 feet and 160 feet, respectively, from the point of the jacking and separated by a distance of 275 feet. Mr. Joseph O'Brien had asked permission of the Illinois Toll Highway Commission to drill test holes to determine soil conditions and was refused, resulting in complete reliance on the Cook County Highway Department borings. The closer boring indicated a stiff layer of clay causing the belief that jacking operations could proceed without difficulty since cohesive soil does not exert undue pressure on the arch of a pipe during jacking operations. The information furnished on the borings did not correlate with actual subsurface conditions, namely that the soil was very fine sand and silt, with small traces of clay, and was extremely water laden. Although the plaintiffs started to jack the pipe pursuant to the specifications they immediately encountered adverse soil conditions and difficulty in jacking the pipe. Due to the infeasibility of finishing the job by means of the specified method, *i.e.*, jacking, the contractor devised a radically different method of construction, which was approved by the Cook County Highway Department and the Illinois Tollway Commission. This was the monolithic tunnel method.

The final paragraphs of the letter conclude:

"We feel that we are in a position of having undertaken a contract to perform work as specified in a particular manner at prices which we would not have agreed to had we received true and correct representations from the Cook County Highway Department. We were confronted with a condition markedly different from that which we could reasonably be expected to encounter.

In order that it be clearly understood that we have incurred these additional costs by reason of soil conditions unanticipated by us, we hereby submit our cost bills for an adjustment in price for completion of this work performed by us, and we request the Cook County Highway Department to reimburse us for the extra cost encountered by the changed conditions of the contract."

The defendant sought to introduce this letter into evidence as an admission by plaintiffs that the type of conditions encountered at the tollroad were unanticipated, and that the jacking of pipe there was im-

practical because of extreme and unreasonable difficulty and expense. The trial court sustained plaintiffs' objection to the introduction of the letter into evidence. We do not feel the judge abused his discretion in that regard.

■■ The letter, dated June 16, 1971, related to added expenses incurred by plaintiffs, the general contractors, in completing the work project, abandoned by defendant, by means of the monolithic method. The plaintiffs are not claiming damages for these sums in the present action against the defendant. Plaintiffs only seek from defendant costs for installing the 84½ feet of pipe which plaintiffs themselves were actually able to jack into place in defiance of defendant's efforts. Furthermore, in light of our decision that the applicable law of impossibility here does not really include a consideration of "unanticipated circumstances rendering performance impracticable because of extreme and unreasonable difficulty, expense, injury, or loss," the plaintiffs' alleged admission of such circumstances is not material. The plaintiffs do not admit that it was impossible to jack in 84½ feet of pipe at the tollroad site, and indeed could scarcely do so, since they accomplished the task, and their damages therefor are all they seek in this action. The trial court has the right to refuse evidence which will serve no useful purpose in the trial or which is incompetent to prove an issue. *Stenwall v. Bergstrom,* 405 Ill. 281, 90 N.E.2d 778; *Dinschel v. United States Gypsum Co.,* 83 Ill.App.2d 466, 228 N.E.2d 106.

Even assuming the letter had some probative value as to a material issue, which we do not admit, any error in excluding it was not prejudicial to defendant. The unforseen difficulty in jacking in the pipe at the tollroad was amply demonstrated by defendant's evidence, and not seriously controverted by plaintiffs.

The defendant's next contention is that the trial court erred in sustaining objections to the same letter, defendant's exhibit four, offered for impeachment of John Rusnak, plaintiffs' superintendent, and Joseph O'Brien, one of the owners of Joseph W. O'Brien Company, a plaintiff herein.

Rusnak testified at trial that it was his opinion that the tunneling under the roadway should be done by a monolithic method as opposed to jacking even before the subcontract was let to the defendants. He based this opinion on the fact that the borings taken had indicated to him that the soil conditions were water and silt, and adverse to jacking pipe. O'Brien testified that he could not say whether the soil information was misleading. The letter written by plaintiffs indicated that the borings were misleading and had not reflected actual soil conditions.

For reasons similar to those above relating to the offer of the letter

as substantive evidence, we find no abuse of discretion in disallowing use of the contents of the letter for impeachment of either of these two witnesses. And in any event, in view of our previous discussion, no prejudice to the defendant can be demonstrated.

■■ The defendant's final contention is that the court erred in admitting into evidence summaries of costs incurred by plaintiffs at both constuction sites because of defendant's breach of contract. We perceive no merit in defendant's arguments relating thereto. The record reveals that a proper foundation was laid for their admissibility, and the trial judge did not abuse his discretion in determining that the summaries contained no items improperly included either by virtue of the nature of the expenses included or by virtue of the time when the expenses were incurred. Furthermore, although the plaintiffs sought in excess of $57,000 in damages, the jury returned a verdict in the amount of $25,000.

The difficulty encountered by defendants was simply a peril of the work undertaken by them, and the trial court properly directed a verdict against defendant Scott in accordance with that proposition. The evidentiary rulings of the trial court were proper, and in any event not crucial to the final outcome of the case. For these reasons, the judgment is affirmed.

Affirmed.

DIERINGER and JOHNSON, JJ., concur.