THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BERNARD LEWIS, Defendant-Appellant.

First District (3rd Division) No. 60731

Opinion filed May 20, 1976.

Adam Bourgeois and Allan A. Ackerman, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Bernard Lewis, was indicted for the offenses of attempt murder (Ill. Rev. Stat. 1973, ch. 38, par. 8—4, 9—1) and aggravated battery. (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(b)(1).) A jury found him guilty and he was sentenced from 6 to 18 years in the penitentiary. He appeals this conviction, contending that the trial court erred in excluding proffered testimony and that the prosecutor's misconduct deprived him of a fair trial.

Melvin Hicks, 18 years old, was shot in the back by Lewis and permanently paralyzed. He testified that on January 16, 1973, he was

visiting his grandfather who lived in an apartment building located at 4120 South Prairie Avenue, Chicago. As he was waiting for an elevator to go to his grandfather's apartment he was approached by Lewis who said: "[P]unk, where is my money?" Hicks asked Lewis how much money he owed him and Lewis replied, "$10.00." Hicks offered him $3. Lewis refused to accept this amount, so Hicks put the $3 back in his pocket. Lewis then grabbed Hicks by the collar and a fight ensued.

Both men landed several punches with Hicks striking the last blow which caused Lewis to stagger backwards. Hicks stood his ground for a few moments and as he did so he saw Lewis reach into his pocket; but he then turned his back on Lewis and walked toward the elevator.

While he was walking away he was warned by Catherine Larrue, who had witnessed the fight, that Lewis had pulled out a gun. Hicks looked over his shoulder, saw the weapon and began to run. Larrue and two other residents of the neighborhood, Shirleen Brown and Curtis Williams, saw Lewis stretch out his right hand and fire the gun in Hicks' direction. Hicks tripped and fell face forward. While he was lying on the ground, Lewis walked up to him, shot him in the back and ran away.

Larrue and Williams aided Hicks, and Williams called the police. The police searched the area where Lewis had fled, but did not recover the weapon used in the shooting. Lewis was arrested that evening in his father's apartment in the same building. The officer who made the arrest testified that Lewis admitted fighting with Hicks but denied shooting him.

Lewis repeated the admission and the denial at his trial. He also denied having a weapon in his possession. He stated that he saw Hicks, whom he knew from seeing him entering and leaving the building, as he got off an elevator. Hicks asked him for money and when he refused to give him any, a fight started during which Hicks grabbed his shirt, punched hm in the eye and knocked him against a wall where he stumbled and fell. He said the fight lasted about five minutes and took place in the presence of three or four youths. As he was trying to pick himself up, he heard two shots. Immediately after hearing the shots, his girlfriend, Linda Webster, came to his aid and the two of them ran up the stairway to his apartment. He said that he attempted to phone the police, but could not because the line was busy and the police arrived just a few minutes later.

The trial court would not allow Lewis to testify that Hicks was a member of a street gang and would not allow him to relate that portion of his conversation with Hicks that carried an implication of gang membership. In a conference with the court, the defendant's attorney said that Hicks was a member of a gang known as the Disciples, and that he and other gang members had threatened Lewis. The attorney argued that such testimony was relevant because the fist fight was the result of Hicks' attempts to coerce Lewis into joining the gang.

■■ ■ We believe that the court was correct in excluding direct testimony of gang involvement, but incorrect in excluding Lewis' version of the conversation. A trial court has the right to refuse evidence which will serve no useful purpose or which is incompetent to prove a material issue. (*Stenwall v. Bergstrom* (1950), 405 Ill. 281, 90 N.E.2d 778; *Dinschel v. United States Gypsum Co.* (1967), 83 Ill. App. 2d 466, 228 N.E.2d 106.) Evidence of gang membership is admissible only if there is sufficient proof to show that such membership is related to the crime charged or if the evidence of membership has probative value in reference to an issue properly in dispute. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840; *People v. McMurray* (1972), 6 Ill. App. 3d 129, 285 N.E.2d 242.) The ultimate issue in this case was whether Lewis shot Hicks. Lewis did not try to justify the shooting, he denied it. Therefore, Hicks' alleged gang affiliation was immaterial to the ultimate issue. On the other hand, both the victim and the defendant testified that the dispute started over money owed by one or the other, and since Hicks had been allowed to testify fully about the conversation, Lewis should have been permitted to do so too.

Additionally, the court would not permit Lewis to testify why he ran from the scene of the crime. This was a mistake. Since evidence of Lewis' flight could be considered with all the other evidence tending to prove his guilt, he should have been given the opportunity to explain his reason for running away. *People v. Montgomery* (1973), 16 Ill. App. 3d 127, 305 N.E.2d 627.

Lewis, however, was not harmed by either ruling. He was able to testify, before an objection was sustained to further testimony on the subject, that when he encountered Hicks after getting off the elevator, Hicks demanded the dues he said Lewis owed to "the gang." Similarly, in reference to his fleeing, Lewis testified on cross-examination that he ran up 14 flights of stairs to his parents' apartment because he feared for his life. And his friend, Linda Webster, who basically corroborated his story of the shooting, testified that they fled because of the two shots they heard. Thus, despite the court's earlier exclusions, Lewis was able to get before the jury testimony which implied that Hicks was a member of a gang and that he was collecting for it, and he was also able to explain to the jury his reasons for running away.

■■ The contention that the conduct of the prosecutor deprived the defendant of a fair trial, is concentrated on allegedly prejudicial remarks made by him during his closing argument. We will not consider those to which no objection was made nor those to which objection was sustained. The former are deemed to be waived (*People v. Weaver* (1972), 8 Ill. App. 3d 299, 290 N.E.2d 691) and sustaining objections to the latter cured their minor impropriety.

■■ In his argument the prosecutor stated that the police department's crime laboratory was not called into the case because "this kind of shooting would not leave powder burns." This comment was not based on evidence and was therefore improper, however it was far from prejudicial.

■■ Linda Webster, the defendant's girlfriend, did not substantiate his story of the shooting until she appeared as his witness, although the shooting had taken place more than a year before the trial and she had had various opportunities to talk to police department investigators. In commenting upon her veracity the prosecutor said:

> "A girlfriend, Linda Webster, sat on that witness stand and told you that here she is up in the apartment just witnessed a shooting, there are policemen coming up to the apartment. She also finds out that her boyfriend is being charged with the shooting and she doesn't bother to tell anybody, any of the policemen around that her boyfriend couldn't have done the shooting because she is picking him off a wall when the shooting happens. She waited a year and a half for this spectacular piece of information just to be given to you twelve jurors as she took the stand. That is ridiculous, she is a liar, there are no two ways about that.
>
> Defendant's attorney: Objection.
>
> The court: Argument.
>
> The prosecutor: She lied on that witness stand."

It is not reversible error for a prosecutor to say that a witness lied if his statement is founded on the evidence. (*People v. Clark* (1975), 34 Ill. App. 3d 570, 340 N.E.2d 171.) The prosecutor's characterization, while harsh, was not without an evidentiary basis.

The defendant's most strenuous criticism is directed to the prosecutor's repeated references to Hicks' paralysis. Despite the fact that the defense stipulated that Hicks was permanently paralyzed, the prosecutor commented upon his physical condition seven times during his closing argument. The defendant argues that this was nothing more than an impermissible appeal to the sympathy of the jury. The extent of Hicks' injury was relevant to the crimes for which the defendant was on trial, attempt murder and aggravated battery (*People v. Coolidge* (1963), 26 Ill. 2d 533, 187 N.E.2d 694) but the severity of his injury was not in issue and the repetitious references to his condition were uncalled for.

■■ Every defendant, regardless of the nature of the proof against him, is entitled to a trial that is free from improper comments that engender prejudice. (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19.) However, where it appears that the improper remarks do not constitute a material factor in the conviction, or that prejudice to the defendant is not their probable result, the verdict will not be disturbed.

We do not believe that the cumulative comments deprived the defendant of a fair trial or were a factor in his conviction. There was no evidence—although Lewis sought to intimate as much—that Hicks was shot by some third person. Three disinterested witnesses saw Lewis shoot Hicks and the proof of his guilt was overwhelming.

The judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.