## The Continental Casualty Company v. Belle M. Johnson, guardian, etc., et al.

1. INSURANCE POLICY—*when joint action may be brought on.* Where an insurance policy provides that in case of the death of the insured the company will pay to the children of the assured named therein, not that it will pay to each of them an aliquot part thereof, a joint cause of action thereon may be brought, either by such children or by their personal representatives.

2. INSURANCE POLICY—*death of insured held not to have occurred in such manner as to defeat liability.* Held, from the facts of this case, that the court was not justified in disturbing a verdict which found that the assured did not lose his life by reason of unnecessary exposure to danger (a risk not covered by the policy).

3. INSURANCE POLICY—*when does not lapse.* Where the insured repeatedly attempted to pay his premium but the agent "firmly believed" that the same was not due, the fact that it was not paid is deemed the fault of the agent and a lapse will not be held to have occurred notwithstanding the premium was actually due.

4. AGENT—*when represents company.* An agent clothed with the power of soliciting insurance, delivering policies and collecting premiums, is the agent of the insurance company and not the agent of the insured. Such an agent is a general agent and as such has power to waive forfeitures and conditions in the policy, notwithstanding the provision therein that no agent has such power.

Action of assumpsit. Appeal from the Circuit Court of Marion County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

MANTON MAVERICK and L. M. YAGY, for appellant.

W. F. BUNDY and FRANK F. NOLEMAN, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit on an accident insurance policy issued by appellant to Charles W. Johnson, August 16, 1902, by which appellant undertook to pay $2,500 to the children of the insured named in the policy, in case of his death, resulting from personal bodily injuries, through external, violent and purely accidental causes, provided such injuries should solely and independently of all other causes, neces-

sarily result in his death within ninety days from the date of said accident. The policy also provided for an addition of five per cent for each year it should run. The insured came to his death on the night of August 22-23, 1903, shortly after midnight, when he was struck by an engine pulling a passenger train on the Illinois Central Railroad on a street crossing in the city of Centralia. After his death the company refused to pay the insurance and this suit was brought upon the policy, resulting in a verdict and judgment against appellant for $2,625, the full value of the policy.

Three defenses to the suit were relied upon by appellant in the court below and are insisted upon here. They are (1) that the plaintiffs below could not properly join in one suit to recover the amount due on the policy, as their legal interests were separate; (2) that the insured lost his life by reason of voluntary exposure to unnecessary danger or to obvious risk of injury by reason of which, by the terms of the policy, the amount recoverable is only one-tenth the amount otherwise payable; (3) that the policy sued on in the case had lapsed prior to the death of the insured because of the non-payment of a premium which fell due before that time. We will consider these defenses in the order in which they are named. The policy provided that in case of the death of the insured, under certain conditions named, the amount of the policy should be paid to "S. H., L. H., E. M. and R. Johnson, his children, equally if surviving, otherwise to the legal representatives of the insured." The children named were shown by the proofs to have survived their father After his death Ethel M., named in the policy as "E. M.," died and her mother Belle M. Johnson was appointed administratrix of her estate. This suit is brought by the guardians of the three living children named in the policy who are minors, and the administratrix of the deceased child. The legal effect is the same as though the children were all living, all adults and the suit was brought in their names. The contract made by appellant with the insured, was that in case it be-

came liable to pay the policy it would pay the amount of its liability to the children named therein, not that it would pay each one of them an aliquot part thereof. At the death of Mr. Johnson, therefore, the right of action, if any, accrued to the four children jointly and it was not necessary that each should sue for his or her own interest in the fund.

By the terms of the policy it was provided that if the insured should lose his life by reason of unnecessary exposure to danger or to obvious risk of injury, then the liability of the company should be one-tenth the amount which would otherwise be payable under the policy, and it is claimed by appellant that the evidence showed that deceased unnecessarily exposed himself to danger and to obvious risk of injury at the time he was killed. The proof showed that on the night of August 22, deceased Johnson and one Maxfield hired a horse and buggy from a livery stable in Centralia and drove to a village some ten miles distant to attend a Modern Woodmen's picnic; that Johnson was a man of temperate habits and no intoxicants were sold at the picnic; that on their return and while apparently attempting to drive across the tracks of the Illinois Central Railroad at a street crossing, just within the city limits of Centralia, they were struck by a train running at from 40 to 60 miles an hour, and both men were killed. The train was a passenger train and was running as the second section of a regular passenger train due in Centralia at 12:25 A. M. The first section was about five minutes ahead of the second. The engine was equipped with a headlight, which was burning and a bell which was ringing at the time. There were no witnesses to the accident except the engineer and the fireman. The engineer testified on the trial that the first he saw of the horse and buggy or occupants, was when the horse leaped across the track in front of the engine. The question as to whether deceased exposed himself unnecessarily to danger or to obvious risk of injury was submitted to the jury by an instruction given for appellant and we find nothing in the proof to warrant us in disturbing their verdict on that subject in favor of appellees.

We will next consider the last defense relied upon by appellant, namely, that the policy sued on had lapsed because of the non-payment of a premium due before the death of the insured. The premiums on the policy were payable in four instalments of $3.13 each, the first due on August 20, 1902, and the others quarterly thereafter. At the expiration of the first year, appellant issued the insured a renewal certificate, extending the policy for one year from August 16, 1903. The first quarter's premium on the second year fell due August 20, four days later. The agent for appellant at Centralia, was J. R. Severns, who solicited business, delivered policies, collected premiums, gave receipts therefor and remitted the same to appellant. It was his custom, as he testified, not to send in to the company, premiums collected after the 15th of the month until about the 5th of the following month. The renewal certificate provided that the policy should remain in force for twelve months longer provided the full premium for the same should be paid when due in the same manner as stipulated in the original application and that it should be subject to all the agreements, conditions and provisions of the policy and of the application therefor. The agent Severns testified when called as a witness for appellant, that about the time he delivered the renewal certificate to Johnson, the latter offered to pay the premium for the ensuing year, but that he, Severns, refused to take it saying that he did not want to carry the money with him, did not want it on his hands until he had to send it off, that he would see Johnson later about it; that Johnson said, "Keep track of it and don't let that policy lapse;" that on the morning of August 20 (which was the day the premium was due) witness passed the store where Johnson was engaged as a clerk, and Johnson said to him, "Come in and I will pay you that premium, that insurance;" that witness said, "Charlie, wait until I come back for I haven't got time; I will miss my train if I do;" that witness proceeded to the train and Johnson called to him "Come in tonight then;" that the train was late on his return trip and that

Continental Casualty Co. v. Johnson.

when he got home all the stores were closed and Mr. Johnson had gone home and he did not see him; that witness went to Johnson's place of business on Friday but did not find him there; that on Saturday, August 22, witness on his way home to supper was overtaken by Johnson who said to him "You come in after supper I want to pay that premium; I do not want it to lapse; I want to pay it;" that after supper he went to find Johnson but that the latter and Maxfield had then gone to the picnic, in returning from which Johnson was killed. Witness also testified that he was under the impression and so told Johnson that the premium was not due until September 6. He afterwards testified that he was not certain he told Johnson it came due on the 6th. Mr. Ditzler who had an office with Severns, testified that on August 19 Johnson came to see Mr. Severns, saying he wanted to pay his insurance premium but that Mr. Severns was not then in the office. Another witness testified that about the 8th or 10th of August he was in Johnson's place of business; that Severns came in and Johnson spoke to him about paying his quarter on that insurance, but that Severns put him off and went out. Still another witness testified that on Saturday, August 22, he went to the store where Johnson was clerking and paid him his Woodmen's dues; that while he was there he saw Severns standing near the stove; that Severns started out and Johnson called him and told him he would like to straighten up his dues on his policy; that Severns said "I will be in after while in the after part of the day;" that Severns told Johnson he had some other claims to collect and that he would send them all off together. It thus appears that Johnson attempted to pay his premium to the agent about the time the renewal certificate was delivered to him, also on the day the premium was due, a day or two after in became due and at other times, but that the agent refused on each occasion to receive it; that the agent thought the premium was not due until September 6 and as said by him on one or more occasions, he did not wish to be bothered with the money until he had to send it off.

What more could Johnson be expected to do than he did do? To have required anything more of him would have been unreasonable in the extreme. Johnson's failure to pay the premium due on August 20 was the result of no fault of his but was wholly and solely the fault of appellant's agent Severns. As showing the firmness with which he believed the premium was not due until September 6, Severns testified that after the death of Johnson he told several parties that the insurance was all straightened and that Johnson had always paid his premiums on time; that he went to his book and notified the company of Johnson's death and that he knew no better for two or three days later when he examined his book again and found he had made a mistake in the day. On August 31, 1903, after the death of Johnson, attorneys for appellees paid Severns the amount of the premium due and he received it, saying that he would send it to appellant and write a letter explaining the matter and that "if the company received it and accepted it all right they would make it good." Appellant, however, refused to accept the premium and the draft for the same after being sent back and forth several times, was finally held by appellant subject to the order of attorneys for appellees. That payment of the premium when due was waived and refused by appellant's agent is unquestioned, but appellant claims that its agent had no authority to extend the time of payment and that the policy became void when Johnson failed to pay the premium on the day it became due. Appellant's position apparently is that although it gave the agent power to solicit insurance, deliver policies, collect premiums and forward the same to the company, yet the insured is responsible for all mistakes made by the agent and in case the agent refuses the premium on the day it is due and postpones the time of payment for his own convenience, the insured or his beneficiaries must bear the loss if any occurs. The position taken by appellant is not sustained by the law.

An agent clothed with the power of soliciting insurance, delivering policies and collecting premiums is the agent

of the insurance company and not the agent of the insured. Such an agent is a general agent and as such has power to waive forfeitures and conditions in the policy notwithstanding the provision therein that no agent has such power. John Hancock Mut. Life Ins. Co. v. Schlink, 175 Ill. 284; Metropolitan Life Ins. Co. v. Sullivan, 112 Ill. App. 500.

Upon an examination of the instructions given and refused and the rulings of the court in regard to the evidence, we find no errors of sufficient materiality to warrant a reversal of this case.

The judgment of the court below will be affirmed.

*Affirmed.*