## Amos Hooker, Appellant, v. Farmers Mutual Reinsurance Company, Appellee.

### Gen. No. 9,207.

the October term, 1939. Heard in this court at Opinion filed March 7, 1940. Rehearing denied April 3, 1940.

STEELY, STEELY, GRAHAM & DYSERT, of Danville, for appellant; H. M. STEELY, JR. and WALTER V. DYSERT, of counsel.

ACTON, ACTON & BALDWIN, of Danville, for appellee; W. M. ACTON, and JOHN M. BOOKWALTER, of Danville, of counsel.

MR. JUSTICE HAYES delivered the opinion of the court.

This is an appeal from the circuit court of Vermilion county in an action by the plaintiff against the defendant insurance company, to recover twelve hundred ($1200.00) dollars for the loss of hay destroyed by fire on August 20, 1938. At the close of plaintiff's case, the court directed a verdict for the defendant. Judgment was entered against the plaintiff in bar of the action and for costs, from which judgment plaintiff appeals.

The complaint declares on a policy of fire insurance issued by the defendant, bearing policy number 30700, which became effective August 13, 1935, and was to be in force for one year, with a provision that it could be automatically renewed for such like successive terms of one year each, not to exceed four years. Complaint alleges that said policy was renewed for two such yearly terms, and about 30 days prior to the expiration of the third year,—August 13, 1938—plaintiff made an oral agreement with defendant, through its local agent, to renew said policy for another year. Complaint further alleges that on August 20, 1938, the hay, covered by said policy, was destroyed by fire. Plaintiff

charges that it was the custom and practice of said defendant, through its local agent, to renew and extend plaintiff's insurance, carried with the defendant, from time to time before it lapsed so that it would not lapse.

Defendant, in its answer, denies liability; denies the renewal of the policy or the authority of the agent to make an oral agreement for a new policy; admits that Fred Watson is a special agent of the defendant, but avers his authority is limited to the solicitation of applications for insurance.

The proofs tended to show that the policy in question was executed by the defendant, with the signature of the president and secretary of the company thereto attached, and that it was effective August 13, 1935, at noon, to be in force for one year, with a provision that it "may be automatically renewed for like successive terms for one year each not exceeding four, if an amount equal to the initial payment is paid on or before the expiration of the then current term."

The policy, and the documents attached to it, are very long and involved, covering 24 pages in the record. The proofs show that this policy was renewed for two terms following the initial term, which brought the expiration date of the policy up to the 13th day of August, 1938.

The plaintiff testified that in April, preceding the expiration of this policy, he held another policy with the same company. At that time Fred Watson, the agent, with another man called on him at his office, and plaintiff signed an application for the renewal of this policy. Watson then went to plaintiff's wife and received a check for the premium, and the company mailed him the policy. Plaintiff further testified to getting renewals with another agent of the same company, as he had five or six live policies in force with the defendant. Plaintiff stated that one day, in the latter part of June, 1938, he was in the Fitzsimmon's restaurant and had a conversation with Watson the agent, in regard to the renewal of the policy in question.

There were several others present, and the agent told him then that his hay policy was coming due shortly, and asked him what he wanted to do about it. Plaintiff told him he wanted it renewed, and that he would depend on Watson to take care of it. The agent replied that he would. Plaintiff told him to call at his farm to see his wife and get a check for it.

Plaintiff's wife testified that Watson came to their home in July, 1938, and stated that Mr. Hooker wanted him to renew the insurance, and also wanted him to cover some other property. She said she didn't understand it but would call Mr. Hooker, whereupon Watson said it was not necessary to call her husband as there was plenty of time and he would come back again. The hired man corroborated her testimony, and stated that Watson did not ask for the payment, but just said he came to fix the insurance. Plaintiff's conversation at the restaurant with Watson was confirmed by four other witnesses.

Under the terms of the policy, all that was needed to make the renewal was payment of the premium prior to August 13, 1938. This premium was not paid. Plaintiff contends it was waived by the agent Watson. Defendant insists Watson was a special agent with limited authority to receive applications and forward them to the home office. The proofs show, that on at least one other occasion prior to this time, Watson had collected the premium on another policy belonging to plaintiff from plaintiff's wife, and the company ratified his act by issuing the renewal and forwarding it to the plaintiff. This was in April, 1938, on a policy insuring other property of the plaintiff.

In establishing agency, a previous course of dealing, sanctioned or ratified by the principal, is competent, as having a tendency to prove agency in the given case, although the jury must determine its weight for such purpose. 2 C. J. 947.

In the case of *Benatti v. John Hancock Mut. Life Ins. Co.*, 290 Ill. App. 438, the court said: "From the

evidence it is apparent that payments were received by the defendant after the due date but within the grace period, with the exception of when the payment was made on August 29, 1934, which the plaintiff contends was 29 days after the due date. When this payment was made plaintiff's wife called the collecting agent's attention to the fact that the payment was late, and the agent assured the wife of the plaintiff that the matter of a day or two tardiness in payment would not make any difference. Of course, the rule is that an agent of an insurance company is not empowered to change the provisions of the contract. This must be conceded, but a company operating through agents can be bound by the acts of its agents in waiving provisions providing for payment of premium. In support of this rule no citation of authorities of courts of last resort is necessary.''

Our Supreme Court in the case of *Baxter v. Metropolitan Life Ins. Co.,* 318 Ill. 369, said:

''Waiver by an insurer results when, by an act, statement or course of conduct toward the assured, it recognizes the policy as existing though the time for payment of the premium has expired; and if the conduct of the insurer is such as to induce the assured to believe that a forfeiture will not be insisted upon, the insurer will be held to be estopped from taking advantage of such forfeiture.

''Forfeiture of life insurance policies is not favored, and unless the circumstances show a clear intention to claim a forfeiture for non-payment of the premium, forfeiture will not be enforced.''

It appears from the evidence that on August 3, 1938, the defendant mailed the plaintiff a postcard from Chicago, stating that the company would be prepared to offer the insured a new policy contract, when he renewed his fire policy number 30700, due August 13, 1938, and suggested a change in rates. It also advised the insured that an agent of the company would call

upon him to renew the policy so that "there would be no break in the continuity of his insurance."

The record discloses that no agent called in the interval from the receipt of this card until the date of the fire. There is nothing in the record to show that plaintiff was guilty of fraud or deception, and the circumstances of the agent promising to see that the policy was renewed, together with the statement by the company that an agent would be sent in time to take care of his renewal, are significant factors. The plaintiff directed the agent to go to his wife to get the check for the premium. The agent, upon visiting the wife, stated he came to take care of the insurance and make a change in the property that was to be covered, instead of saying he came for the premium payment, and told her not to call her husband as he would come back later, there being ample time. These circumstances were sufficient to warrant the trial judge in submitting the case to the jury.

"Waiver of, or estoppel to assert noncompliance with, a requirement that the premium be prepaid may arise from acts or omissions of insurer or its agents. If insured is prevented by insurer from performing such a condition insurer cannot assert such a failure." 26 C. J. 67.

" 'In fact, the delivery of the policy without exacting the payment raised the presumption that a credit is intended, and is a waiver of the condition of prepayment. The waiver may also be inferred from any circumstances fairly showing that the insurers did not intend to insist upon the prepayment of the premium as a condition precedent.' " *Germania Fire Ins. Co. v. Muller,* 110 Ill. App. 190, 194.

Where a life insurance policy provides for a forfeiture for the nonpayment of the annual premium on or before a specified time, such provision is for the benefit of the insurance company, and the company has a right to waive the forfeiture and dispense with a

prompt payment of the premium at the time when it is due. Unless the circumstances show a clear intention to declare a forfeiture, it will not be enforced. Where the practice of the company, and its course of dealing with the insured, and others known to the insured, has been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, the company will not be allowed to set up such forfeiture as against one in whom their conduct has induced such belief. An insurance company has the option to waive a condition or stipulation made in its own favor. Forfeitures are not favored in the law, and courts readily seize hold of any circumstances that indicate an intent to waive a forfeiture.

" 'Any agreement, declaration or course of action, on the part of an insurance company, which leads a party insured honestly to believe that, by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture.' '' *Railway Passenger & Freight Conductors' Mut. Aid & Ben. Ass'n v. Tucker,* 157 Ill. 194, 200.

The allowance of a directed verdict for the defendant preserved for review only a question of law, whether from the evidence in favor of the plaintiff, standing alone, and when considered to be true together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. (*Ziraldo v. W. J. Lynch Co.,* 365 Ill. 197; *Brophy v. Illinois Steel Co.,* 242 Ill. 55; *City of Chicago v. Jarvis,* 226 Ill. 614.)

In the case of the *Continental Casualty Co. v. Johnson,* 119 Ill. App. 93, 98, the insurer had offered to pay the premium to the agent, but he refused to accept it,

and stated he would get it later. Before the premium was paid the policy expired, and the insured was killed. The court said:

"Appellant's position apparently is that although it gave the agent power to solicit insurance, deliver policies, collect premiums and forward the same to the company, yet the insured is responsible for all mistakes made by the agent and in case the agent refuses the premium on the day it is due and postpones the time of payment for his own convenience, the insured or his beneficiaries must bear the loss if any occurs. The position taken by appellant is not sustained by the law.

"An agent clothed with the power of soliciting insurance, delivering policies and collecting premiums is the agent of the insurance company and not the agent of the insured. Such an agent is a general agent and as such has power to waive forfeitures and conditions in the policy notwithstanding the provision therein that no agent has such power."

For the reasons herein stated, judgment of the circuit court of Vermilion county is hereby reversed and cause remanded for a new trial.

*Reversed and remanded.*