Irene Rago, as Administrator of the Estate of Joseph L. Rago, Deceased, Plaintiff-Appellant, Cross-Defendant-Appellee, v. Cosmopolitan National Bank, as Trustee, Chicago Title & Trust Company, as Trustee, Roberta E. Dale, John R. Winterbotham, as Trustee, and Unknown Owners, Defendants-Appellees, Roberta E. Dale, Cross-Plaintiff-Appellant.

Gen. No. 51,557.

First District, Second Division.

November 10, 1967.

■■■■

Dominic Rossi, of Chicago (Alphonse Cerza, of counsel), for appellant.

Torme & Horwich, of Chicago, for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This was an action in equity to foreclose a junior mortgage brought by plaintiff, Irene Rago as administratrix of the estate of the decedent-mortgagee, Joseph Rago, her

husband, wherein the mortgagor and principal defendant, Roberta Dale, filed a cross-complaint to have her promissory note, together with the mortgage securing it, declared void and removed as a cloud upon title. Defendant, Roberta Dale, was the beneficial owner of the encumbered premises, an apartment building located at 2128 North Cleveland Avenue in the City of Chicago, pursuant to a land trust agreement with the defendant, Cosmopolitan National Bank under Trust No. 10143.

Plaintiff appeals from that portion of the decree which overruled her exceptions to the Master's Reports dismissing the foreclosure for want of equity, which granted the prayer of defendant's cross-complaint, and which assessed certain costs and fees against plaintiff. It is the theory of plaintiff's case: (1) that defendant failed to rebut plaintiff's prima facie case under the applicable provisions of the Uniform Commercial Code, and (2) that the Chancellor erred in assessing improper as well as excessive elements of costs against plaintiff.

Defendant cross-appeals from that portion of the same decree which assessed one-half of the Master's fee ($600) against her. Relative to plaintiff's appeal, it is the theory of defendant's case: (1) that the evidence offered manifestly supports the decree entered, and (2) that the charges assessed plaintiff for attorney's, trustee's and court reporter's fees were reasonable in amount and proper. As to her separate cross-appeal, it is defendant's theory that the Chancellor erred in assessing one-half of the Master's fee against her.

No questions are raised on the pleadings. Save the errors assigned to the assessment of costs and fees, the pivotal issue involved in this appeal is, essentially, whether or not defendant has proven a failure of consideration for the junior trust deed. The facts as they pertain to that single question will be limited accordingly.

15

The extent of the evidence offered by plaintiff in support of her contentions before the Master consisted of Plaintiff's Exhibits 1 through 5 inclusive. Exhibit 4 is a letter of direction, dated November 7, 1962, authorizing Cosmopolitan, as trustee, to sign the installment note and subject trust deed, with an attached receipt for said documents' delivery, all bearing defendant's signature. Exhibit 3 is the trust agreement with Cosmopolitan, dated August 23, 1960, which designates defendant as the sole beneficiary thereof. Exhibits 1 and 2 are the junior trust deed and installment note respectively, both of which are dated November 7, 1962, and made payable to bearer in the principal sum of $22,000. The mortgage and note recite that the first payment thereunder was due on January 1, 1963.

Plaintiff testified that she had first become cognizant of the note and mortgage about a month after the mortgagee's death on January 16, 1964, but admitted, on cross-examination, that she did not know whether the decedent had paid any money for the mortgage. Thereupon, plaintiff rested her case.

Defendant admits execution of the mortgage and note by and through Cosmopolitan. She alleges, however, that both instruments are null and void for failure of consideration. In support of that contention by defendant, the following testimony was offered.

John Iacono, the attorney who had prepared the trust deed and note in behalf of the decedent, Joseph Rago, testified that after he had delivered the instruments in their final form to his client, he had never been requested to collect any payments thereunder.

Phillip Dindia testified to having known both the decedent and the defendant for several years. He stated his relationship with the two stemmed primarily from periodic social engagements he and his wife would share with the decedent and defendant, whom the witness stated

16

were having a love affair. Dindia acknowledged that he had been aware of the mortgage between the two, and that he had understood it had been intended to finance some remodeling work in defendant's multidwelling apartment building. Defendant, in this conjunction, offered into evidence Defendant's Exhibit 2, a set of plans for the proposed renovation. Thereafter, Dindia testified to certain remarks made by the decedent-mortgagee in response to Dindia's inquiries regarding the mortgage.

These conversations were alleged to have taken place in May and December of 1963, at which times the decedent is purported to have said:

> "Phil, I am afraid of losing Bobbie (the defendant). Her and I aren't getting along too well, . . . . I created the mortgage scheme or bit, . . . in order to hold some sort of clout or object over her head . . . . Phil, I don't want to lose her."

Responding to a further inquiry by Dindia, the decedent was alleged to have said:

> "No, I did not give her any money. . . . I am holding this, and I am going ahead and going to make her suffer."

Subsequently accused by Dindia of never having made any payment to the defendant under the mortgage, the witness stated that the decedent replied:

> "I know that, I don't intend to collect the mortgage, and someday I may release it."

Dindia's wife, Paula, testified to essentially the same sequence of events and corroborated her husband's account of the relationship between the parties. She, however, stated that she had been unable to overhear the substance of any of the conversations had between the decedent and her husband in regard to the mortgage.

17

Marie Donnelly, who lived with defendant, similarly testified as to the relationship of the defendant and decedent, both of whom she had known for several years. The witness purported to have overheard a conversation between the two parties in November or December of 1963, that when the defendant asked decedent why he made her sign the mortgage without giving her any money for it, the decedent replied:

> "I've got you where I want you. Wait until Marie (the witness) leaves, and I'll tell you more."

This was the extent of the evidence offered by defendant before the Master. Nothing was offered by plaintiff in rebuttal, nor did plaintiff, at any juncture in the proceedings below, submit any receipts or memoranda to evidence the receipt of payment/s from the decedent-mortgagee.

On April 29, 1966, a decree was entered overruling plaintiff's exceptions to the Master's Reports and approving the findings and conclusions therein. The Master had found that while plaintiff had established a prima facie case, defendant had proven by uncontested testimony and documentary evidence that the agreed consideration for the trust deed had never been paid. It was his recommendation that the trust deed be declared void and removed as a cloud upon defendant's title. The Master fixed his fee at $1,400. The Chancellor subsequently reduced the Master's fee to $1,200 taxing one-half to each of the two principal litigants. Plaintiff, in addition thereto, was ordered to pay $154.40 to defendant, for certain stenographic expenses incurred; $60 to Cosmopolitan for a trustee's fee; and $342.80 to John H. Winterbotham (attorney for the trustee of the senior mortgage, Chicago Title and Trust Company) for attorney's fees. It is from this decree that the cross-appeals are taken.

The litigants are in agreement in regard to the applicability of the Uniform Commercial Code, the instru-

ments having been executed after July 1, 1962. (Ill Rev Stats (1965) c 26, par 10–101.) They do disagree, however, as to whether article 3 (Commercial Paper) or article 8 (Investment Securities) is controlling in this particular case. By their admissions, the choice is not decisive to the issue presented. While we are in agreement, in the interests of consistency, a choice nonetheless must be made. Inasmuch as the instant trust deed makes specific reference to the indebtedness as evidenced by defendant's note, of even date, and the mortgage is generally treated merely as a security for and incident of the note, we feel that it can be reasonably said, for our limited purpose of discussion here, that the instant case falls within the provisions of the article relating to Commercial Paper. Lundy v. Messer, 25 Ill App2d 513, 167 NE2d 278 (1960); Krueger v. Dorr, 22 Ill App2d 513, 161 NE2d 433 (1959). Cf. Marks v. Pope, 370 Ill 597, 19 NE2d 616 (1939). No violence to the language of article 8, section 102(1)(b) however is intended.

 Plaintiff below affirmatively established her prima facie right to foreclosure of the mortgage. The long established rule, which has remained substantially unchanged since the inception of the Code, is that the mere possession and production into evidence by the holder of a note and trust deed, the execution and default in the performance of which is established, entitles that holder to a prima facie basis for recovery thereon, unless and until, the defendant interposes and establishes a defense. See section 3–307(2) plus comment to subsection (2), Miller v. Swanson, 66 Ill App2d 179, 213 NE2d 294 (1965); In re Estate of Ruebush, 53 Ill App2d 54, 202 NE2d 344 (1964).

 The questioned trust deed and note, both payable to bearer, were in the possession of and offered into evidence by plaintiff. Plaintiff was a "Holder" within the meaning of the statute (Ill Rev Stats (1965) c 26, par 1–201(20)) and thereby legitimately entitled, prima fa-

cie, to recovery on her prayer, with the burden of preponderating on the defense of failure of consideration shifted to defendant. See section 3–307(2), Miller v. Swanson, 66 Ill App2d 179, 213 NE2d 294 (1965); In re Estate of Ruebush, 53 Ill App2d 54, 202 NE2d 344 (1964).

As to defendant's defense, plaintiff has exhaustively attacked both the credibility and probative value of the testimony so offered. With citation to authorities, plaintiff emphasizes the definition of legal consideration, in its broader or more generic sense. Plaintiff submits that the evidence, at best, established the absence of payment in money only and not the failure of a consideration in one of its many other forms.

We disagree with plaintiff's contention because it attempts to view consideration in a vacuum, rather than as it relates to the entirety of the evidence adduced. Plaintiff, herself, admits that she did not know of the mortgage until a considerable time after Joseph Rago died, and that she similarly did not know whether any money had been paid for it. The mortgagee's attorney, Iacono, had never been requested to collect any payments in any form thereunder. The uncontradicted and corroborative testimony of defendant's witnesses, moreover, established that the mortgage was a continuing scheme or plan to perpetuate the decedent's relationship with defendant, not simply, as plaintiff suggests, that no money was paid. Such a conclusion is further buttressed by the fact that the decedent took no legal action on his security interest during his lifetime, notwithstanding the default in payments for in excess of a year on the date of his death, with the total indebtedness thereby becoming due under an acceleration clause. This again lends credence to the decedent's purported admission that he did not intend to collect on the mortgage. We feel the evidence established that no payment in any form was ever made or ever intended to be made.

Plaintiff further assails the suspect nature of the proffered extrajudicial statements of the deceased, again with citation to authority. Unlike the cases relied upon however, the testimony being scrutinized, when analyzed in its totality, was not improbable, was corroborative in nature, and of particular significance, could have easily been discredited by the production of signed receipts for value received, or other evidence of consideration.

■ ■ Defendant's witnesses were clearly shown to have been disinterested nonparties, their testimony not serving any particular personal gain. There is no merit in plaintiff's contention that the witnesses were incompetent to testify under the Dead Man's Statute (Ill Rev Stats (1965) c 51, pars 1 and 2), Huff v. State Bank & Trust Co., 414 Ill 111, 110 NE2d 449 (1953). Accordingly, the findings and conclusions of the Master as approved by the Chancellor, were resolved solely upon the question of the credibility of the witnesses, a determination which cannot be disturbed by this court absent a showing that the findings were contrary to the manifest weight of the evidence. Miller v. Swanson, 66 Ill App2d 179, 213 NE2d 294 (1965) ; Krueger v. Dorr, 22 Ill App2d 513, 161 NE2d 433 (1959).

■ A valid defense being established, the burden was upon plaintiff to show wherein she was unaffected by failure of consideration; viz., she, or someone under whom she claimed, was in all respects a holder in due course of the note evidencing an indebtedness. (Section 3–307(3) plus comments to subsection (3).) This plaintiff failed to do, offering no testimony or documentary evidence in rebuttal whatsoever. Eldred v. Williamson, 33 Ill App2d 10, 178 NE2d 414 (1961). Nor can it be urged that plaintiff acquired the status of a holder in due course simply by virtue of taking over as the administratrix of decedent's estate. See section 3–302(3) (b). Such a rule has long been established, founded

21

upon the theory that the representative of an estate is not a purchaser for value before maturity without notice, hence acquiring no greater rights than those possessed by the decedent during his lifetime. Eldred v. Williamson, 33 Ill App2d 10, 178 NE2d 414 (1961); Kuhlmeyer v. Butz, 215 Ill App 414 (1919). The evidence offered by defendant supports that portion of the decree which dismissed the foreclosure action and granted the prayer of defendant's cross-complaint.

Regarding her objections to the fees and costs assessed, plaintiff submits that by virtue of the repeal (effective August 24, 1965) of paragraph 38 of the Fees and Salaries Act (Ill Rev Stats, c 53), the Master below was without his statutory and exclusive power to charge for fees or expenses of court reporting and transcription, or that in the alternative, such fees and expenses were excessive under the statute.

It appears that the Master below was commissioned, by order of the Circuit Court, to act in his official capacity until December 6, 1965, a date subsequent to his final disposition of the instant case, and thus within the provisions of the savings clause of paragraph 8 of the new Judicial Article (Ill Const (1964) art VI, par 8). That clause provides for the continuation in office of a Master under certain limited conditions, notwithstanding the general abolition in Illinois of the Office of Master in Chancery. While the clause does not so provide expressly, it is our opinion, that a fair construction of the language therein would entitle a Master continuing in office under its terms to a reasonable compensation for services rendered. See House of Vision, Inc. v. Hiyane, 37 Ill2d 32, 225 NE2d 21 (1967). With plaintiff's second argument as to the costs of reporting and transcription, we similarly disagree. The reason being as to either alternative offered, that the contention is simply inapposite on the point of law urged. Plaintiff relies upon paragraph 38 of

the Fees and Salaries Act which purports only to regulate the maximum expenses which can be charged by the Master and made payable to him. Here, plaintiff has evidently overlooked the fact that the costs were ordered payable to the defendant, not to the Master.

█ We do find merit, however, in plaintiff's contention that the $1,400 charged by the Master for his fee was excessive and unreasonable. It does not appear from the record that plaintiff was afforded a full and formal hearing on the subject by the Chancellor, who upon plaintiff's objection, summarily reduced the sum to $1,200. Moreover, the Master's certificate of charges was not properly itemized, so that this court could ascertain the propriety of each specific service or expense. While there were but two hearings conducted involving the depositions and testimony of only seven witnesses and 73 pages of transcribed testimony or argument, it would be impossible, upon the record before us, to determine the fee to which the Master was entitled. Basinski v. Basinski, 20 Ill App2d 336, 156 NE2d 225 (1959). Accordingly, there should be a hearing conducted below so that the amount can be accurately and justiciably determined. Cf. Galler v. Galler, 45 Ill App2d 452, 196 NE 2d 5 (1964), (reversed on other grounds) 32 Ill2d 16, 203 NE2d 577 (1964).

█ We further find that the $342.80 fee to the attorney for the trustee of the senior mortgage as well as the $60 trustee's fee to Cosmopolitan were improperly assessed against plaintiff and should be disallowed. The rule has long existed that in the absence of some statute or an agreement or stipulation between the parties which specifically authorizes the allowance thereof, a court of Chancery cannot tax the costs incident to litigation against the unsuccessful party. Rasch v. Rasch, 278 Ill 261, 115 NE 871 (1917) ; Ritter v. Ritter, 381 Ill 549, 46 NE2d 41 (1943). As to fees of the attorney representing

the senior mortgage, it was stipulated from the onset of hearings below, that the instant case would be unaffecting as to the superior rights of that first mortgage. As to Cosmopolitan's fee as trustee, contrary to defendant's suggestions, we can find no language in the subject trust deed which would import any obligation upon the holder thereof to assume any expenses incidental to a foreclosure on his or her security. Metropolitan Life Ins. Co. v. Kinsley, 269 Ill 529, 109 NE 1011 (1915). Cf. Sentry Royalty Co. v. Craft, 79 Ill App2d 410, 226 NE2d 282 (1967).

Finally, as to her separate cross-appeal, defendant submits that having prevailed in her positions in both the complaint and her cross-complaint, the Master's fee should have followed the decree and been borne en toto by plaintiff. We disagree. The power to assess costs is vested in the sound discretion of the Chancellor, absent a showing of wherein that discretion has been abused, it should not be disturbed. Clearly, the Chancellor below was not without justification in taxing one-half of the Master's fee (as it will stand in its reduced sum upon remandment and hearing) against defendant. Her cross-prayer was unnecessary, it being an ancillary form of relief which would have come on a determination of the case in chief. Lee v. City of Chicago, 31 Ill2d 252, 201 NE2d 361 (1964).

For the above reasons that portion of the decree which dismissed plaintiff's foreclosure complaint for want of equity, declared the junior trust deed void and removed as a cloud upon defendant's title, and directed that one-half of the Master's fee be paid by defendant, is affirmed; that portion of the decree which assessed the $342.80 attorney's fee and the $60 trustee's fee against plaintiff is reversed; and that portion of the decree which allowed $1,200 as fees to the Master is reversed and the

cause remanded with directions to proceed in a manner not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded with directions to proceed in a manner not inconsistent with this opinion.

BURKE and BRYANT, JJ., concur.