RESOLUTION TRUST CORPORATION, as Conservator for Standard Federal Savings Association, Transferee of Resolution Trust Corporation for Standard Federal Savings Bank, Plaintiff-Appellee, v. ALBERT R. HARD-ISTY, JR., Defendant-Appellant (Cheryl A. Hardisty *et al.*, Defendants).

Third District    No. 3—94—0448

---

Opinion filed February 2, 1995.—Rehearing denied March 14, 1995.

Daniel J. Kallan, of Kallan & Grnacek, of Joliet, for appellant.

Samuel H. Levine, of Harold I. Levine, Ltd., of Chicago, and Codilis Associates, of Darien, for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Resolution Trust Corporation, filed a two-count com-

plaint in the circuit court of Will County. Count I sought a foreclosure of its mortgage against property located in Romeoville, Illinois, and a personal deficiency judgment against defendant, Albert Hardisty, based on a mortgage note. Count II sought liability against the defendant based on the family expense act. The circuit court of Will County entered a judgment of foreclosure and sale in favor of the plaintiff. Defendant appeals. We reverse.

On December 30, 1977, defendant and his wife, Cheryl Hardisty, purchased a home in Romeoville, Illinois. Defendant claims his only involvement with the family finances after the purchase of this property was to give his paycheck to his wife. Consequently, Mrs. Hardisty took financial responsibility of the household. This included making mortgage payments on the property.

In 1985, Mrs. Hardisty began to fall behind on the mortgage payments. Consequently, foreclosure proceedings were initiated and the property was conveyed to the Federal National Mortgage Association in 1988 at a foreclosure sale. The mortgage was eventually assigned to the Standard Federal Savings Bank. The Federal National Mortgage Association then conveyed the property back to the Hardistys.

Mrs. Hardisty testified that, unbeknownst to the defendant, she attended this closing with an individual acting as the defendant. Apparently, the defendant had no knowledge of the family's financial predicament. Thus, Mrs. Hardisty and the person who pretended to be her husband signed the necessary papers.

The defendant testified his wife never informed him of the financial difficulties associated with the property. The first time defendant became aware of his financial situation was in 1993 when his children informed him of the problems. Consequently, defendant argued that he neither attended the closing, nor had any knowledge of the foreclosure. To support his argument, defendant called a handwriting expert to testify that the signatures on the mortgage, the Veterans Administration assumption rider, and the mortgage note were not the defendant's.

Nevertheless, once this closing was completed, Mrs. Hardisty began to make mortgage payments. In 1991, she once again had problems with her mortgage payments. Accordingly, Esther Joyal, an investor in rental properties, became involved. She supplied $17,000 to the Hardistys in order to reinstate the mortgage. In return, Ms. Joyal received a quitclaim deed and an occupancy agreement.

As a result of their agreement, Mrs. Hardisty would give Ms. Joyal two checks at the beginning of every month. The first, for $600, was made to cover the mortgage payments; the second check, for

$300, was compensation for the loan. However, Mrs. Hardisty soon began to send Ms. Joyal only one check for $300. She told Ms. Joyal she was sending the mortgage check on her own. The truth, however, was the mortgage payments were not being made at all. Consequently, the Hardistys were once again in default and plaintiff filed its complaint to foreclose the mortgage.

After a bench trial, the circuit court made several alternative findings. Specifically, it held if the defendant was at the closing and signed the documents, then he was liable under the terms of the mortgage and mortgage note. Alternatively, if he was not physically present, he was nevertheless liable under the terms of the mortgage and mortgage note because he had granted his wife the authority to sign the documents on his behalf. Finally, if the defendant was not present at the closing and did not authorize his wife to sign the documents, then he lost his property after the 1987 foreclosure and never regained title.

However, defendant argues on appeal that he signed neither the mortgage, nor the mortgage note. Furthermore, he argues he did regain title to the property because the deed prepared for the 1988 closing, furnished by the Federal National Mortgage Association, named both defendant and his wife as grantees. Therefore, because it was properly executed and recorded, defendant should have an unencumbered one-half interest in the property. We agree with the defendant's argument.

A mortgage is an interest in land, created by a written instrument, providing security for the performance of a duty or payment of a debt. (*Resolution Trust Corp. v. Holtzman* (1993), 248 Ill. App. 3d 105, 618 N.E.2d 418.) Furthermore, a debt or mortgage obligation of some kind is an essential element in a transaction to create a relationship of mortgagor and mortgagee. (*Rago v. Cosmopolitan National Bank* (1967), 89 Ill. App. 2d 12, 232 N.E.2d 88.) A mortgage foreclosure is an equitable action commenced in order to enforce the lien placed on the mortgaged property. (*Harms v. Sprague* (1984), 105 Ill. 2d 215, 473 N.E.2d 930.) Its purpose is to enforce the payment of the mortgagor's debt. (*Skach v. Sykora* (1955), 6 Ill. 2d 215, 127 N.E.2d 453.) However, its effect is the termination of legal and equitable interests in the real estate. 735 ILCS 5/15—1202 (West 1992).

The mortgage in this case included an acknowledgement by a notary. Where an instrument has been acknowledged by a notary and is in substantial compliance with the statute, it may not be impeached except for fraud and imposition. (*Krueger v. Dorr* (1959), 22 Ill. App. 2d 513, 161 N.E.2d 433.) Moreover, the party seeking to impeach such an acknowledgement, or record of conveyance, must do

so by providing clear and convincing evidence coming from a disinterested witness. (*Koepke v. Schumacher* (1950), 406 Ill. 93, 92 N.E.2d 152.) Furthermore, the trial court's determination on the matter will not be disturbed unless it is against the manifest weight of evidence. *Finley v. Felter* (1949), 403 Ill. 372, 86 N.E. 188.

The reason for such a strict rule is evident. Parties act on the faith of the certificate of acknowledgement. Consequently, public policy, security of titles, and peace of society require these instruments be given full credit. (*Koepke*, 406 Ill. at 98, 92 N.E.2d at 155.) Nevertheless, with this important public policy in mind, we believe the trial court's determination was against the manifest weight of evidence.

We do not take this position lightly. We note this court has traditionally been reluctant to impeach records of conveyance and certificates of acknowledgement. However, this hesitation has customarily originated from untrustworthy evidence presented at trial. For example, in *Finley v. Felter* (1949), 403 Ill. 372, 86 N.E.2d 188, plaintiff claimed his signature on a deed conveying his property to a third party was a forgery. To support this argument, plaintiff testified his name had been misspelled on the deed. The court held plaintiff's testimony was the only evidence directly supporting the claim of forgery. However, because plaintiff was not a disinterested witness, his testimony was insufficient to impeach the record of conveyance and certificate of acknowledgement.

Likewise, in *Witt v. Panek* (1951), 408 Ill. 328, 97 N.E.2d 283, the court again held the evidence was insufficient to overcome a record of conveyance and certificate of acknowledgement. The court made this holding despite the testimony of a handwriting expert stating the signature was forged. However, the expert's testimony in *Witt* was refuted by other disinterested witnesses testifying on behalf of the signature's validity.

Consequently, the long line of cases upholding the validity of a recorded document after a challenge of forgery fall into two typical situations. First, several cases rely on the testimony of an interested witness to establish the forgery. In such circumstances, our supreme court has stated:

> "[S]hould the law allow the unsupported testimony of an interested witness, who conceives that a very material gain is within his grasp, to offset and destroy the deliberate act of certification under oath by one created by law to certify instruments of conveyance, it would shock the moral sense of the community, deny justice, and create chaos in land titles." (*Koepke*, 406 Ill. at 98, 92 N.E.2d at 155.)

In other situations, the party attempting to establish a forgery has presented evidence from disinterested witnesses. However, in those cases, the opposing party either has its own disinterested witness testifying on its behalf, or has effectively impeached the testimony of the original disinterested witness. Consequently, in either circumstance the parties rarely establish a forgery by clear and convincing evidence.

■ In contrast, the situation presented here does not fall into either situation. Unlike other cases we have reviewed, here we have disinterested witnesses presenting evidence on behalf of the defendant without being impeached or contradicted by other disinterested witnesses. Specifically, the handwriting expert unequivocally stated the signatures on the documents were not the defendant's. In addition, the general foreman at defendant's place of employment stated defendant was working the entire day of the quitclaim transaction. This testimony is supported by the defendant's "time sheet" for that day.

Plaintiff, on the other hand, relies solely on the testimony of the notary who was present at the 1988 closing. The notary testified the defendant was present at the closing and signed the documents. However, this notary is not a disinterested witness. She is an agent of the Attorneys' Title Guaranty Fund, Inc. This company insured the title and the mortgage involved in this transaction. As such she has a direct stake in the outcome of this litigation. Moreover, defendant effectively impeached the notary's testimony by calling into question her recollection. Therefore, we believe defendant has shown, by clear and convincing evidence, his signature on the documents was forged.

We also disagree with the circuit court's conclusion that the defendant gave his wife the authority to sign the mortgage and mortgage note on his behalf. For this argument we presume the circuit court meant defendant's wife was acting as defendant's agent for the purpose of signing the mortgage. However, as a preliminary matter we note the circuit court incorrectly made inconsistent findings as to the defendant's presence at the closing. In a bench trial, it is the judge's function to weigh the evidence and make findings of fact. (*Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 581 N.E.2d 656.) Findings of fact are determinations from the evidence of a case, either by a court or administrative agency, concerning facts averred by one party and denied by another. (*Kozsdiy v. O'Fallon Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 173, 334 N.E.2d 325.) Consequently, it follows that a trial court cannot make inconsistent findings of fact. Here, the trial court first determined the defen-

dant could have been present at the closing; then, it also determined the defendant was not present at the closing. We simply note that a trial court cannot make an inconsistent determination such as this.

An agency is a consensual fiduciary relationship between two legal entities whereby the principal has the right to control the conduct of an agent, and the agent has the power to effect legal relations of the principal. (*Gunther v. Commonwealth Edison Co.* (1984), 126 Ill. App. 3d 595, 467 N.E.2d 1104.) An agency relationship need not depend on express appointment, but may be found in the situation of the parties, their actions, and other relevant circumstances. *Matthews Roofing Co. v. Community Bank & Trust Co.* (1990), 194 Ill. App. 3d 200, 550 N.E.2d 1189.

■ Here, the circuit court found Mrs. Hardisty's authority to sign the mortgage and mortgage note in the parties' course of dealing. A previous course of dealing sanctioned or ratified by the principal is competent as having a tendency to prove an agency relationship. (*Hooker v. Farmers Mutual Reinsurance Co.* (1940), 304 Ill. App. 230, 26 N.E.2d 146.) However, granting a spouse the authority to pay the household expenses does not amount to granting a spouse the authority to sign a mortgage. These two types of transactions are entirely different. Consequently, we do not believe defendant granted his wife any authority to sign the mortgage on his behalf.

Finally, the circuit court held, if the defendant was not present at the 1988 closing in either a personal or represented capacity, then he never regained title to his property after the 1987 foreclosure. Again, we disagree.

■ Where a deed is executed, acknowledged, and recorded it is presumed to have been delivered, and whoever questions the fact of delivery under such circumstances must assume the burden of overcoming the presumption by clear and convincing evidence. (*Stenwall v. Bergstrom* (1950), 405 Ill. 281, 90 N.E.2d 778.) The execution and recording of a deed by a grantor shows, *prima facie*, an intention on his part that such a deed become legally operative. (*Maciaszek v. Maciaszek* (1961), 21 Ill. 2d 542, 173 N.E.2d 476.) Here, the deed was signed, acknowledged, and recorded. In addition, no one at trial made an argument regarding the deed's legal validity. Consequently, the deed properly conveyed the property back to the defendant in 1988. Moreover, defendant's interest is not encumbered by either the plaintiff's mortgage or Ms. Joyal's equitable mortgage. Therefore, we hold defendant does have an unencumbered, one-half interest in the property.

Finally, defendant argues he is entitled to attorney fees under the Rights of Married Persons Act (Act) (750 ILCS 65/15 (West 1992)).

Specifically, he argues since the trial court found no liability under the Act, the statute requires the award of attorney fees. We disagree.

Under this Act, a husband or wife can bind the other, or both, in purchases of goods ostensibly for family use and adapted for such use, while the family relation exists. (*Carson Pirie Scott & Co. v. Stanwood* (1923), 228 Ill. App. 281.) Consequently, a debtor's spouse can be held liable for a debtor's bills if a family in fact existed at the time of the expenditures and the expenditures were incurred for a family expense. *Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n* (1991), 222 Ill. App. 3d 738, 584 N.E.2d 341.

■ The Act also allows for the imposition of attorney fees against a creditor who wrongfully maintains an action against a spouse who did not incur the family expense. (750 ILCS 65/15(a)(3) (West 1992).) However, this section of the Act is not applicable here. Count I of plaintiff's amended complaint sought a personal deficiency judgment against the defendant. Consequently, liability pursuant to count I presumes the defendant would be personally liable on the note. In contrast, the second count of plaintiff's amended complaint was included as an alternative theory of recovery. In the event the defendant was not found to be personally liable on the note, plaintiff sought liability based on the Act. However, despite the confusion surrounding the trial court's alternative findings, count II became inapplicable once the trial court found the defendant personally liable on the note. Consequently, the second count was not wrongfully included, rather it became inoperative because of the trial court's findings. Therefore, attorney fees are not proper.

Accordingly, the judgment of the circuit court of Will County is reversed.

Reversed.

McCUSKEY and BRESLIN, JJ., concur.