*In re* ESTATE OF GENEVIEVE BONTKOWSKI, a Disabled Person, Thaddeus M. Bond, Guardian-Appellee (Guido M. Calcagno, Jr., as Independent Adm'r of the Estate of Guido M. Calcagno, a/k/a Guido Calcagno, Deceased,[1] Plaintiff-Appellant, v. Edward M. Bontkowski *et al.*, Defendants-Appellees).[2]

First District (4th Division)   No. 1—01—2927

Opinion filed January 30, 2003.

---

[1]Guido M. Calcagno died on December 14, 1999, prior to the trial in this case, Guido M. Calcagno, Jr., was appointed independent administrator of the estate of Guido M. Calcagno and was granted leave to substitute in as a party to this action replacing Guido M. Calcagno, individually. The parties have failed to indicate this substitution of parties in the captions of the briefs filed in this court.

[2]The only appellee to file a response brief and participate in this appeal was the estate of Genevieve Bontkowski.

Rathje, Woodward, Dyer & Burt, of Wheaton (Reese J. Peck, of counsel), for appellant.

Law Offices of Thaddeus M. Bond, Jr., & Associates, P.C., of Waukegan (Thaddeus M. Bond, of counsel), for appellee Estate of Genevieve Bontkowski.

JUSTICE HARTMAN delivered the opinion of the court:

This case involves a mortgage foreclosure action filed by plaintiff-appellant, Guido M. Calcagno, Jr., as independent administrator of the estate of Guido M. Calcagno, a/k/a Guido Calcagno, deceased (Calcagno), and an action filed by the defendant-appellee, estate of Genevieve Bontkowski,[3] a disabled person (Estate), to set aside two quitclaim deeds, against which the mortgages sought to be foreclosed by Calcagno were recorded. Calcagno appeals the circuit court's findings that both deeds were void and, therefore, the mortgages sought to be foreclosed were of no effect against the Estate. On appeal Calcagno contends (1) the court erred in finding a deed involving property at 4970 North Mason Avenue (the Mason property) was forged and therefore void; (2) the finding that a fiduciary relationship existed between Edward Bontkowski (Edward), one of Genevieve's sons, and Genevieve Bontkowski (Genevieve) was erroneous; (3) the Estate failed to rebut the presumption that the quitclaim deeds were signed by Genevieve on the date they bear; and (4) the Estate failed to rebut the presumption that Genevieve was of sound mind and of the requisite donative intent when she executed the deeds.

Prior to June 1, 1997, Genevieve owned a six-flat located at 2551 West Cortez (Cortez property) and the two-flat described as the Mason property, in one of the units of which she had resided since 1980. On June 1, 1997, she allegedly executed two quitclaim deeds transferring title to the Cortez and Mason properties into land trusts held by the Chicago Trust Company. Her son Edward was the sole beneficiary of both land trusts. The Estate filed a petition for recovery of real estate seeking to set aside the quitclaim deeds, asserting that Genevieve's signatures on those deeds were forged.

Calcagno made loans to Edward on August 10, 1997, in the amount of $84,000, on September 15, 1997, in the amount of $60,000, and on October 14, 1997, in the amount of $45,000. The mortgages/trust deeds securing the August 10 and October 14 loans were recorded against the Cortez property and the mortgage/trust deed securing the September 15 loan was recorded against the Mason property. Calcagno filed a mortgage foreclosure action which was consolidated with the Estate's action.

At trial, it was shown that Genevieve was an 85-year-old Polish immigrant at the time of the 1997 quitclaim deeds; had at most a

---

[3]Genevieve Bontkowski died on June 26, 2001.

sixth-grade education; and had a limited knowledge of the English language. She had been hit by a car in October 1996. Two other of her sons, Richard Bontkowski (Richard) and Thaddeus Bond, Sr. (Bond), testified that following this car accident Genevieve suffered from memory loss, loss of equilibrium, and severe mood swings.

Richard testified that the signatures on the Mason deed did not look like his mother's. He asserted that Genevieve was not reasonably lucid in June and July 1997.

Bond testified that the signatures on both deeds were not his mother's. In May 1997 Genevieve was unable to sign her name. On June 1, 1997, he spent the day with Genevieve from 9 a.m. until 7 p.m. June 1, 1997, was a Sunday and he always spent Sundays with his mother.

Rosemarie Lewandowski testified that she was the notary public used to acknowledge Genevieve's signatures on the quitclaim deeds, which she notarized at the request of Edward. She met Edward in a coffee shop on July 22, 1997, and placed her signature and notary seal on the deeds. She admitted that she never met Genevieve and had no idea what her signature looked like. The deeds were not signed in her presence.

Diane Marsh, the Estate's handwriting expert, testified that the signatures on the Mason property deed were not Genevieve's, but that the signatures on the Cortez property deed probably were hers. Calcagno's handwriting expert, James L. Hayes, testified that it was not possible that the signatures on the Cortez deed were forged. He further stated that the signatures on the Mason deed could be neither identified nor eliminated as those of Genevieve. Calcagno introduced a letter from Dr. George Demos, one of Genevieve's treating physicians, which stated that he had been seeing her since May 1997 and that prior to sometime in July 1997, Genevieve had been very lucid. Further, her mental status changed sometime in July 1997. "Since then she has had episodes of waxing and waning mental status changes with episodes of being very lucid and episodes of being confused."

Edward presented the testimony of three Hoyne Savings Bank employees, Iris Larson, George Hehn, and Ralph Carstensen. Their testimony established that in April, May, and June of 1997, Genevieve presented herself at the bank and conducted her financial transactions.

Calcagno proved up the mortgage foreclosure action through the testimony of Guido M. Calcagno, Jr., who established the damages under the three mortgages.

The circuit court entered judgment in favor of the Estate, finding: (1) the deed transferring the Mason property was forged and therefore

void and (2) there was no evidence to support a finding that the Cortez deed was forged or that Genevieve was incompetent on June 1, 1997, but the deed was void because the transfer of the Cortez property was the result of Edward's breach of the fiduciary relationship between himself and Genevieve. The court further dismissed the amended complaint for foreclosure against the Estate, finding that because the two deeds were void, the subsequent notes and mortgages were of no effect against the Estate. The court denied Calcagno's motion for reconsideration and vacature as to the Estate but granted it as to Edward. The court entered judgment in favor of Calcagno and against Edward in the amount of $387,871.97. The court awarded Calcagno attorney fees and costs against Edward in the amount of $50,003.35. Calcagno filed a notice of appeal. Although Edward also filed a notice of appeal, he has filed no briefs nor has he otherwise participated in this appeal.

## I

Calcagno contends that the circuit court erred in finding that the Mason property deed was forged because the forgery was not proved by clear and convincing evidence.[4]

■ The essential elements of a forgery are (1) a false writing or alteration of some instrument in writing; (2) the instrument must be apparently capable of defrauding; and (3) there must be an intent to defraud. *Haffa v. Haffa*, 115 Ill. App. 2d 467, 253 N.E.2d 507 (1969). The validity of signatures on a deed of conveyance and the certificate of acknowledgment can be overcome only by clear and convincing evidence from disinterested witnesses. *Witt v. Panek*, 408 Ill. 328, 97 N.E.2d 283 (1951); *Resolution Trust Corp. v. Hardisty*, 269 Ill. App. 3d 613, 646 N.E.2d 628 (1995) (*Resolution Trust*). The circuit court's determination on the matter will not be disturbed unless it is against the manifest weight of the evidence. *Resolution Trust*, 269 Ill. App. 3d at 617.

■ In the present case, Marsh, the Estate's handwriting expert and a disinterested witness, testified that the signatures on the Mason deed were not Genevieve's. Calcagno argues that the Estate failed to prove by clear and convincing evidence that the deed was forged because on cross-examination Marsh admitted that it was possible that the "G" in the signatures could have been Genevieve's. Marsh

---

[4]Although Calcagno includes the Cortez deed in this argument in his brief, the circuit court specifically found that the evidence did not support a finding that the signatures on the Cortez deed were forged. Moreover, the Estate concedes in its brief that there is no clear and convincing evidence of forgery with regard to the Cortez deed.

further stated, however, that it was not probable that the "G" was Genevieve's because it was different from her habit formation. Hayes, Calcagno's expert, did not contradict Marsh, stating that it was possible that the Mason signatures were forged. Lewandowski, the notary used to acknowledge Genevieve's signatures on the deeds, offered nothing to validate the Mason signatures. She admitted that the deed was not signed in her presence, she had never met Genevieve, and she had no idea what her signature looked like.

The circuit court's finding that the signatures on the Mason deed were forged was not against the manifest weight of the evidence.

## II

Calcagno next contends that the circuit court erred in finding that a fiduciary relationship existed between Genevieve and Edward. Specifically, Calcagno argues that the Estate cannot recover on the theories of fiduciary relationship or undue influence because it failed to plead them.

■ The issues in any litigation are determined by the pleadings and an issue cannot be sustained by evidence absent a corresponding pleading. *Broberg v. Mann*, 66 Ill. App. 2d 134, 213 N.E.2d 89 (1965). "It is a fundamental rule, with no exceptions, that a party must recover, if at all, on and according to the case he has made for himself by his pleadings. He cannot make one case by his averments, and have judgment on another and different ground, even though the latter is established by the proof." *Fornoff v. Smith*, 281 Ill. App. 232, 236 (1935). "[A] party cannot plead one cause of action in its complaint and receive judgment on the basis of a different cause of action." *Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 652, 655 N.E.2d 1065 (1995).

The Estate did not plead breach of fiduciary duty or undue influence. In its petition, the Estate pled the following theories as to why the deeds should be voided: (1) forgery; (2) mental incompetence; (3) the deeds were not executed on June 1, 1997, but were executed much later and backdated because Edward knew that Genevieve was mentally incompetent when the deeds were executed; (4) the deeds were not executed before a notary public; (5) lack of consideration; (6) Genevieve was not represented by legal counsel; and (7) the deeds were recorded more than one month apart.

■ The Estate pled no factors in its petition or in its affirmative defense to the mortgage foreclosure action that would establish undue influence or a fiduciary relationship. The party attempting to set aside a deed has the burden of proof in showing that the deed was procured by undue influence. *In re Estate of Shedrick*, 122 Ill. App. 3d 861, 462

N.E.2d 581 (1984) (*Shedrick*). The nature and extent of the undue influence to be proved must be such as to dominate and control the will of the grantor and cause the grantor to make a disposition of his property which he otherwise would not have made. *Shedrick*, 122 Ill. App. 3d at 867. The burden of pleading and proving the existence of a fiduciary relationship lies with the party seeking relief and, where the alleged relationship does not exist as a matter of law, facts from which a fiduciary relationship arise must be pleaded and proved by clear and convincing evidence. *Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d 416, 487 N.E.2d 758 (1985) (*Guingrich*). The party seeking to establish a fiduciary relationship must show that he placed trust and confidence in another so that the latter gained influence and superiority over the former. *Guingrich*, 139 Ill. App. 3d at 424. The relevant factors in determining whether a fiduciary relationship exists include: the degree of kinship between the parties; the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the "servient" party entrusted the handling of its business affairs to the "dominant" party and placed trust and confidence in the "dominant" party. *Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 733 N.E.2d 345 (2000).

The petition is devoid of any allegations that Genevieve entrusted the handling of her business and financial affairs to Edward or reposed faith and confidence in him. In *Guingrich*, the court affirmed dismissal of the defendant's affirmative defense where defendant failed to plead facts sufficient to claim that a fiduciary relationship existed. The court noted that although at trial defendant put forth evidence regarding the long-term relationship between the Bank and defendant and the disparity in education and business experience, none of these facts were alleged in defendant's defensive pleading.

██ █ Here, the circuit court erred in setting aside the Cortez deed on the grounds of fiduciary relationship and undue influence where such theories were not pled. Nevertheless, the court's decision will be affirmed on another ground which was pled and for which supporting evidence appears in the record. A reviewing court may affirm the circuit court's judgment on any basis that appears in the record, regardless of the basis relied upon by the circuit court. *Cruz v. Puerto Rican Society*, 154 Ill. App. 3d 72, 506 N.E.2d 667 (1987). "The real issue on appeal is not the reasoning of the [circuit] court nor the basis for its decree, but whether its decree was correct." *La Salle National Bank v. International Ltd.*, 129 Ill. App. 2d 381, 390-91, 263 N.E.2d 506 (1970).

██ Genevieve, an elderly widow, deeded her only two significant assets to her son, shown to be a convicted felon, for little or no

consideration. The Cortez deed indicates on its face that the property was transferred for consideration of $10. "Mere want or inadequacy of consideration is, standing alone, no ground for cancelling a deed; *** if, however, a person has been induced to part with a thing of value for little or no consideration, equity will seize upon the slightest circumstance of oppression, fraud, or duress for the purpose of administering justice in the case at hand." *Elsasser v. Miller*, 383 Ill. 243, 252, 49 N.E.2d 21 (1943). See also *Burroughs v. Mefford*, 387 Ill. 461, 56 N.E.2d 845 (1944). Those circumstances exist in the instant case.

In the case *sub judice*, the lack of adequate consideration combined with the following facts supports the circuit court's order that the Cortez deed be set aside. The Cortez deed was prepared by Edward's attorney. Genevieve was without independent legal counsel. Genevieve was an 85-year-old woman. She had no more than a sixth-grade education. Her ability to speak English was limited. The signatures on the Mason deed, which purportedly was signed on the same day as the Cortez deed, were forged. The Cortez deed was not properly notarized. Lewandowski admitted that the Cortez deed was not signed in her presence, she had never met Genevieve, and had no idea what her signature looked like. Genevieve's alleged signature on the Cortez deed was characterized as extremely feeble. No tax transfer stamp was affixed to the Cortez deed, indicating that no monetary consideration passed. Edward did not claim that the property was a gift. The Cortez deed properly was set aside.

In light of the above analysis, Calcagno's remaining arguments need not be addressed.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.